CASE 55.—ACTION BY NICHOLAS HOPE AGAINST THE CITY OF OWNESBORO FOR DAMAGES IN LOWERING STREET OPPOSITE HIS PROPERTY.—March 24.

## City of Owensboro v. Hope

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiff. Defendant appeals—Reversed.

1. Municipal Corporations — Public Improvements — Change of Grade of Street—Damages.—A lot owner is not entitled to recover from a city for consequential damages to a lot adjacent to a street because of the original grading of the street when not done negligently, the street having been previously dedicated or acquired by the city for that purpose, since, where a street is dedicated or acquired by condemnation, it

City of Owensboro v. Hope.

is implied that it may be graded so far as necessary to fit
it for a highway, and it will be presumed that the incon-
venience of the owner of adjacent property and the injury
to such property from the grading were compensated for at
the time of acquiring the right of way; either by the dedicator
or by the jury in awarding compensation under a writ ad
quod damnum.

2. Eminent Domain—Injury to Property not Taken—Change of
Street Grade.—Where a city changes the grade of a street
after it has been established, it is liable to owners of adja-
cent property for injuries thereto under Const. section 242,
providing that municipal and other corporations and indi-
viduals invested with the privilege of taking private property
for public use shall make just compensation for property
taken, injured, or destroyed by them.

3. Municipal Corporations—Change of Street Grade—Payment of
Damages.—The establishment and maintenance for more than
15 years of improvements on lots adjacent to an ungraded
street was not an establishment by the city by acquiescence
of the natural grade of the street as the permanent grade so
as to estop it subsequently from changing that grade without
compensating the owners for damages sustained.

GEORGE W. JOLLY for appellant.

POINTS AND AUTHORITIES.

1. Chancellor may abate public nuisance: A city having re-
quired by appropriate ordinances the excavation necessary to
conform to the grade and construction of side walks as required,
and the property holders on both sides of defendants' lots having
complied, and defendants leaving a dangerous obstruction in the
street in violation of the law, may be compelled by mandatory
injunction at the suit of the city to construct the walk. (Elliott
on Roads and Streets, 664; Dillon Mun. Corps., 659, 660; Smith
Mod. Mun. Corps, 1094; Watertown v. Cowen, 4 Paige, Ch. 510,
27 A. D. 80; Burlington v. Schwartzman, 52 Conn. 181, 52 A.
R., 571; San Francisco v. Buckman, 111 Cal., 25; Pomeroy's Equity,
vol. 4, sec. 1349.)

2. Nuisances may be created by negligence: This court has so
decided: (Young & Humphrey v. Trapp, 118 Ky., 815.)

3. Injunction may issue though there may be other remedies:
The fact that the city might have built the side walks or had
it done is no answer to city's application for injunction: (Mayor
of London v. Bolt, 5 Vesey, 129; Elliott on Roads and Streets,

664; Smith on Mod. Mun. Corps., 1125; High on Injunctions, 1555, and Chapter XIII.)

4. Mandatory injunctions issue in proper cases: It is a proper, cheap and expeditious remedy: (Lane v. Newdigate, 10 Vesey, 192; High on Injunctions, 804, 22 Cyc., 742; And see on general questions involved in these cases: Drew v. Town of Geneva, 150 Ind. 662, 42 L. R. A., 814; Hagertown v. Witmer, (Md.) 30 L. R. A., 649; and valuable notes to these cases.)

WILFRED CARRICO for appellee.

WATKINS & BIRKHEAD of counsel.

1. The city of Owensboro is the creature of its charter, and its council has no power or authority, except that given by the charter of third class cities.

The only authority to build side-walks, and how that authority shall be exercised is specifically given in said charter. (Kentucky Statutes, 3290, subsec. 7, and secs. 3449, 3450, 3451, 3452.)

2. There is nothing in the charter authorizing the council by ordinance, or otherwise, to require abutting property owners to buildside walks, or to do that which appellant is asking the court to compel abutters to do. And any such ordinance would have been void, because of the absence of power in the council to pass it.

3. The only power conferred upon the common council of Owensboro, upon the question at issue, is contained in the sections of the statutes above named. These statutes provide the manner of executing the power, and this excludes every other mode. (Ency. of Law, vol. 20, p. 1142.)

4. Powers of municipal corporation must be strictly construed, and if there is a reasonable doubt of the existence of the power here claimed, it must be resolved in the negative. (Ency of Law, vol. 20, p. 1140.)

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—Reversing.

This action at law was filed in the Daviess circuit court by appellee Hope against the city of Owensboro for the recovery of damages alleged to have been sustained by him by the lowering of the established grade in constructing a macadam roadway opposite his prop-

erty. The plaintiff's lot fronts on the east side of
Clay street, and fronts 40 feet, extending back east,
and was used as a residence. In building the new
street, on the new grade, it is alleged the street was
lowered 3½ feet, and that he had shade trees in front
of his house on his lot which would be destroyed. The
petition states: "He further states that the defendant
city, by an ordinance duly enacted, approved, and pub-
lished, ordered and directed this plaintiff to lower his
said sidewalk from its present position to the grade
established aforesaid. To do this he says that he will
be required to excavate the whole of the front of his
said lot to a depth of 3½ feet, which will necessitate a
new concrete sidewalk, a retaining wall of at least
3½ feet in height, and steps or a stairway to enable
him and others to get from Clay street to his said lot
and residence. The said excavation will destroy his
shade trees in front of his said property. He says all
of this has been made necessary by the excavation and
changing of the grade of the said street in front of his
said property. He further states that the said excava-
tion on said street has destroyed his ingress to and
egress from his said property, and that by reason of
said excavation of said street and lowering of its grade
the plaintiff had been damaged in the sum of at least
$750." Prior to the improvement of the street by
having it graded, macadamized, curbed, and paved as
recited, it appears to have been laid out as a street;
its natural surface being used for such travel as had
occasion to traverse it. It is gathered from the record
that the locality in that vicinity was but sparsely set-
tled, and not until the work now in question was
ordered by the council had the city taken any steps to
establish the permanent grade of the street or of its
sidewalks. Notwithstanding appellee and others saw

proper to erect buildings and fencing, and to set out shade trees adjacent to the street, upon the assumption that the city would never alter the natural grade of the street, or that, if it did, appellee and other property holders could claim compensation for damages thereby inflicted upon their abutting property.

A city authorized to establish, grade, and regrade the streets within its territory assumes a certain public duty with respect to these highways. Its judgment or discretion as to the time when and as to the manner in which the highway shall be improved is generally beyond review, and absolutely so unless in the plan or manner of making or maintaining the improvements it acts with culpable negligence. When a strip of land is dedicated, or is acquired by condemnation, for the purpose of a highway, it is implied that it may be graded so far as may be necessary to fit it for the purposes for which it was set apart; and, in either case, it will be presumed that the dedicator, or the jury in awarding compensation under the writ of ad quod damnum, have estimated the inconvenience of the owner and injury to his remaining property likely to ensue from the necessary and proper grading of the surface. And, until the municipality has once exercised its right to grade the street, the adjacent lot owners have notice that its surface is subject to such change as the municipality may order in the fair exercise of its discretion when it sees proper to improve the highway.

Some authorities hold that the duty of a municipality to grade its streets as may be necessary is a continuing one, and, when the power is granted by the Legislature, can not be abrogated by contract or act of estoppel. Smith's Modern Law of Municipal Corporations, section 318.; Elliott, Streets and Roads, 343 et

seq; Dillon, Municipal Corporations, section 686; Goszler v. Georgetown, 6 Wheat. (U. S. 593, 3 L. Ed. 339. But a distinction is recognized between the rights of abutting owners where no grade has before been fixed and where one has been made. The reason is not far to seek. As already pointed out, the owner is presumed to have been compensated for the injury done by a proper grading of the adjacent highway when he accepted the price for the dedicated strip, or considered the benefits and disadvantages that would accrue from the opening of the road when graded for use. On the other hand, if the damages were awarded by a jury, they must have been instructed to allow compensation for and consider the inconvenience that would result to the adjacent remaining lot; and as such damages must all be recovered in one action, such improvements in their nature being deemed permanent, the presumption arises that such grade when fixed and constructed and its consequences were alike permanent and inseparable. The adjacent owner may then erect buildings with respect to the permanent structure of the street. It is true the town has the right to change the grade, as it ought to do when the public good demands. But in that event, if it takes or injures the adjacent property, that is a taking for the public, and the public should pay for it. It was to meet that precise condition in part that section 242 of the present Constitution of this State was adopted, reading: "Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them, which compensation shall be paid before such taking, or paid or secured, at the election of such cor-

poration or individual, before such injury or destruction. The General Assembly shall not deprive any person of an appeal from any preliminary assessment of damages against any such corporation or individual, made by commissioners or otherwise; and upon appeal from such preliminary assessment, the amount of such damages shall, in all cases, be determined by a jury, according to the course of the common law." Before this Constitution it was held by this court that the municipality had the right to alter a grade once established without liability to adjacent lot owners, provided in doing so no private property right of theirs was invaded, such as obstruction of light, air, or ingress or egress. Louisville v. Louisville Rolling mill Co., 3 Bush 416, 96 Am. Dec. 243; Keasy v. Louisville, 4 Dana 154, 29 Am. Dec. 395. But, construing section 242, Constitution, supra, this court in City of Henderson v. McClain, 102 Ky. 402, 19 Ky. Law Rep. 1450, 43 S. W. 700, 39 L. R. A. 349; City of Mt. Sterling v. Jophson, 53 S. W. 1046, 21 Ky. Law Rep. 1028; City v. Detweller, 47 S. W. 881, 20 Ky. Law Rep. 894, and Barfield v. Gleason, 63 S. W. 964, 23 Ky. Law Rep. 128, held that the former rule was changed, the language of the section indicating a purpose to give the property holders compensation for injury to property as well as for property actually taken in public improvements. But the question here presented has never before arisen in this court, and in Henderson v. McClain, supra, was expressly reserved. It was there said: "But it is argued on behalf of appellant that there is no legal right or equity in a person who dedicates land for street purposes, or in his assignee to compensation for the original establishment of a grade line and the reduction of the natural surface of the street for street purposes to such line, for the rea-

son that, when dedicated unconditionally, the dedi-
cator must be supposed to have contemplated and con-
sented that a grade should be established and the
inequalities of the surface brought to some proper
level, and to have embraced in his grant or dedication
the right to establish such a grade. This question,
however, is not presented by the record. If the law
be that consequential damages are not recoverable for
the original establishment of the grade of a street
which has been dedicated (and this question is
expressly not here decided), the fact that such estab-
lishment is original is matter of defense, and such
fact does not appear in this record." This record,
however, does raise and present the question for
decision. We hold that for such consequential dam-
ages as result to the adjacent lot because of the origi-
nal construction of the street's grade, when done not
negligently, the lot owner is not entitled to recover
from the city; the street having been previously dedi-
cated or acquired by the city for that purpose.

Another question is presented. Appellee and his
vendors had maintained their improvements on the lot
in question made with reference to the natural grade
of the street for more than 15 years. It is argued
from this fact that the city had thereby, by a kind of
acquiescence, established the natural grade as the per-
manent grade of the street. But we think there is a
wide and essential difference between a municipality's
acquiring a right of way for a street by prescription,
and being estopped by a lapse of time from improving
the right of way or street. Laches of public officers
are not generally accounted against the public. Par-
ticularly ought it not in this matter; for concededly
it was within the discretion of the municipal council
when the public welfare demanded, and its resources

would admit of, such an improvement. If it could be held that a failure of the council for 15 years to order a certain kind of improvement worked an estoppel on the public in the matter so that it could not thereafter be•exercised, it would result that it was not the judgment of the municipal council that would determine when such improvement should be made. The public does not lose the right to have its proper officials exercise such a discretion, although previous boards declined or deemed it inexpedient to make the improvement. We think the right of the city to have the street graded was, when the ordinance complained of was passed, precisely as it was when the strip of ground occupied by the street was first dedicated for that purpose. It follows that appellee could not abridge this right by erecting a house or fence or setting out trees along the property line. In so improving his property he took the chances of sustaining a loss by the proper construction of the street when that event happened.

Other objections to the judgment assigned as errors by appellant need not be noticed, as it follows from what has been said that there can be no recovery by appellee in this case in any event.

Judgment reversed. Remanded for proceedings consistent herewith.