## Hazard Dean Coal Co., et al. v. McIntosh, et al.

(Decided February 18, 1919.)

### Appeal from Perry Circuit Court.

1. Eminent Domain—Taking Private Property for Public Use—Compensation.—Constitution, section 13, Bill of Rights, and section 242, which declare municipal and other corporations and individuals invested with the privilege of taking private property for public use, "shall make just compensation for the property taken, injured or destroyed by them," applies to the building without right of a fill for a railroad on the land of another, or the obstructing of the means of ingress and egress to and from his land.

2. Trespass—Liability for Injury from Invasion of Property.—A vendee or lessee of real estate is not exempt from liability for an injury that results from an invasion of another's property, where his possession is based upon no other title than a tortious entry by his vendor, as in such case the act of the vendor in appropriating the property being wrongful, that of the vendee in retaining possession of the property is equally so.

3. Trespass—Wrongful Transfer of Property—Compensation.—The party originally wrongfully taking or occupying the property, can not transfer to another by lease or otherwise any right in the property, except subject to the duty to make compensation therefor.

4. Trespass—Measure of Damages—Instructions.—Where there is a wrongful taking of land constituting a trespass, the wrongful taker thereof cannot complain that the trial court in instructing the jury as to the measure of damages, did not give the measure applicable to the taking of the land by condemnation proceed-

ings; nor in such case was there any error in instructing the jury that the measure of damages was the same as applicable in a case of trespass to realty.

5. Appeal and Error—Instructions.—The refusal of an instruction offered, however correct may be its form or substance, is not error, if the matter thereof is substantially contained in another that the court gave.

JOHN B. EVERSOLE and MORGAN & NUCKOLS for appellant.

J. E. JOHNSON, HOGG & JOHNSON, F. J. EVERSOLE and MILLER, WHEELER & CRAFT for appellee, D. Y. Combs.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted April 2, 1914, in the Perry circuit court against the Hazard Dean Coal Co., and the Lexington & Eastern Railway Co., by Jane McIntosh and Jerry McIntosh, her husband, to recover of them damages for their alleged unlawful taking of parts, and injuring the remainder, of a tract of land belonging to Jane McIntosh and appropriating the parts taken for the bed and right of way of a railroad which the defendants constructed and the defendant, Hazard Dean Coal Co., was operating at or near the town of Hazard, between its coal mine and the main line of the Lexington & Eastern Railway Co. It was alleged in the petition that the defendants had been duly incorporated and were doing business under the laws of this state, that of the former being the mining and marketing of coal, and of the latter a common carrier. By an amended petition, filed nearly a year later, the Bluegrass Coal Co., a corporation also created under the laws of this state, was made a defendant and judgment sought against it on the same grounds relied on for the recovery against the Hazard Dean Coal Co., it being alleged in the petition that the Bluegrass Coal Co. had, since the institution of the action, leased from the Hazard Dean Coal Co. its coal mine and railroad and with the railroad yet holds the land of the plaintiffs, thereby continuing the wrongs first committed by its lessor in unlawfully taking and appropriating it.

The defendants filed separate answers, that of the Hazard Dean Coal Co. admitting construction of the railroad on the land claimed by Mrs. McIntosh, described in the petition, but denying her ownership of it and the unlawful taking thereof; also the allegations as to damages contained in the petition, and alleging that the right

of way and bed for its railroad upon and over the land in question, was procured by purchase from the owner, Jane McIntosh, by one D. Y. Combs, under a written contract which Combs had made with its vendors, W. M. Jones and others, whereby he obligated himself to obtain the entire right of way and bed for the railroad. The answer was made a cross-petition against Combs to the end, that in the event the plaintiffs recovered damages against the Hazard Dean Coal Co. for the wrongs complained of the latter might, in turn, recover the same of Combs; and such was the prayer of the cross-petition. The answer of the Lexington & Eastern Railway Co. simply traversed the averments of the petition. Combs' answer to the cross-petition of the Hazard Dean Coal Co. also traversed its allegations. The answer of the Bluegrass Coal Co. admitted its purchase of the lease, coal properties and railroad of the Hazard Dean Coal Co., but denied the allegations of the amended petition as to the plaintiffs' ownership of the land claimed and the wrongful taking of same by its lessors; also denied any liability on its part for such taking of the land or its own continuance of the use thereof; and reiterated the allegations of the answer of the Hazard Dean Coal Co. as to Combs' procurement of plaintiffs' land for its railroad bed and right of way and, as did that company, made its answer a cross-petition against Combs, who answered controverting all affirmative matter of the cross-petition. Numerous other pleadings, responsive and by way of amendment, were filed by the parties, which we will not notice, as it is believed what has been said will suffice to indicate the issues of law and fact made by the pleadings. Jane McIntosh died shortly after the institution of the action and by a proper order the action was revived in the name of her personal representative and heirs at law.

On the trial in the court below the jury returned a verdict awarding the plaintiffs $2,000.00 damages against the Hazard Dean Coal Co. and Bluegrass Coal Co., a verdict in favor of Combs on the issues made by the cross-petitions against him, and also a verdict in favor of the Lexington & Eastern Railway Co., the last being directed by a peremptory instruction from the court. Judgment was entered by the court in conformity to these findings. The Hazard Dean Coal Co. and Bluegrass Coal Co. were refused a new trial, and from so much of that judgment

as awarded the plaintiffs $2,000.00 damages against them, and as refused them a recovery of these damages on their cross-petitions against D. Y. Combs, they have appealed.

The grounds urged by appellants for a reversal of the judgment are that the trial court erred: (1) in refusing to direct a verdict for the appellant Bluegrass Coal Co. and dismiss the action as to it; (2) in instructing the jury; (3) in refusing instructions asked by appellants.

It appears from the averments of the petition and the evidence found in the record, that at the time of the institution of this action, Jane McIntosh owned a small tract of land containing fifteen or twenty acres lying on Messer Branch, a tributary of the north fork of the Kentucky river and within the corporate limits of the town of Hazard, upon which she, her husband and children resided, and that the appellant, Hazard Dean Coal Co., then owned and was operating within the corporate limits of Hazard a coal mine situated on an adjoining tract of land; that for the purpose of better enabling it to ship and market the coal from its mine, the Hazard Dean Coal Co. constructed a branch railroad or spur track from the main track of the railroad, owned and operated, through Perry county, by the Lexington & Eastern Railway Co., to its coal mine, which branch railroad connects with the latter's railroad at a point about 150 feet below Messer Branch and runs up the branch to appellant's coal tipple, near the mine. As thus constructed the branch railroad crosses and occupies the land of Mrs. McIntosh in two places, bordering the street upon which the land fronts, to the width of the road bed and for a distance of perhaps 500 feet. The branch railroad has since its construction occupied the McIntosh land. It further appears that in constructing the branch railroad the appellant, Hazard Dean Coal Co., filled with dirt and destroyed a valuable and lasting spring on appellees' land; and, in addition, made on the land a fill of rock and dirt 300 feet in length and ten or twelve feet in height, which cut off from the street that part of appellees' land not occupied by the railroad track, and thereby practically destroyed all means of ingress and egress to and from the land to the street.

Appellants' contention that the trial court should have dismissed the action as to the Bluegrass Coal Co., or at any rate have directed a verdict for it, is bottomed

on the theory that the wrongful acts complained of in the petition, if committed at all, were committed by the Hazard Dean Coal Co. before the sale and conveyance by it of its coal mine, railroad and franchise to the Bluegrass Coal Co., and, therefore, the latter is not legally responsible for the damages that may thereby have been caused the appellees. This contention ignores the self-evident fact and legal principle that the Bluegrass Coal Co., by its purchase of the property rights and franchise of the Hazard Dean Coal Co. and entering upon and continuing, to the exclusion of appellees, the use of their land occupied by its railroad wrongfully appropriated by its vendor, and by such user also continuing the consequential injuries to the remainder of appellees' land, will be deemed to have adopted the original wrongful appropriation of the land and, by reason thereof, to become equally with its vendor, the original wrongdoer, liable to appellees for the damages directly resulting to them from such wrongful appropriation of their land.

Constitution, section 13, Bill of Rights, and also section 242, declare:

"Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them." In interpreting this section we have uniformly held that whether the property affected be taken, injured or destroyed, under its mandatory provisions, the owner must be compensated. It has been held to apply to the removal of dirt on its own land by a railroad company in such manner as to withdraw the natural support of the soil of adjoining land of another owner. L. & N. R. R. Co. v. Culbertson, 158 Ky. 561. In other cases it has been held to apply where a railroad company so constructs its track or tracks as to prevent the owner of adjoining land from reasonable ingress or egress to and from his property, or to cause necessarily soot and cinders to enter his dwelling. Stickley v. C. & O. Ry. Co., etc., 93 Ky. 323.

In Stickley v. C. & O. Ry. Co., *supra,* the action was instituted against both the Maysville & Big Sandy Railroad Co. and its vendee, the Chesapeake & Ohio Railway Co., to recover damages for obstructing the right of ingress and egress to and from the plaintiff's property, and also for injuries to the building caused by the smoke and cinders thrown into it by passing trains; the injuries

complained of though begun by the Big Sandy Railway
Co. were continued by the Chesapeake & Ohio Railway
Co. after  its purchase of the railroad and franchise of
the former, which was prior to the institution of the ac-
tion.  A demurrer was sustained to the petition in so far
as it claimed damages of the last named company upon
the ground that its vendor was alone responsible for the
injuries complained of by the plaintiff.  In rejecting this
defense and holding the vendee as well as the vendor
liable on the cause of action set forth by the petition,
we in part said: "But here it is distinctly averred that
the right of property has been invaded by both vendor,
while it operated the road, and the vendee since its pur-
chase or lease, in obstructing the right of entrance to the
dwelling.  It seems to us there can be no good reason as-
signed for relieving a vendee from all liability of injury
that amounts to an invasion of another's property, where
his possession is based upon no other title than a tortious
entry by his vendor.  The act of the vendor in appropri-
ating the property being wrongful, that of his lessee is
equally so.  And while the lessee may not be liable for the
mode of the original entry, he is, nevertheless, liable for
appropriating this property to his own use. . . . A
railroad company which enters upon and appropriates
the land of another to its own use, without right, cannot
transfer its corporate privileges to another so as to jus-
tify a continuance of the wrong in its vendee, as if the
latter were an innocent purchaser.  It is a taking in both
instances without compensation being previously made to
the owner. . . . Fulton v. Shore Route Transfer Co.,
86 Ky. 640; L. & N. R. R. Co. v. Finley, 86 Ky. 294.''

In Lewis on Eminent Domain, section 456, it is said:
"No right can be acquired in private property under the
power of eminent domain, except subject to the duty of
making just compensation therefor; consequently the
party originally taking or occupying the property can not
transfer to another by lease or otherwise, any right in
the property, except subject to the same duty."

The rule announced in Stickley v. C. & O. Ry. Co., etc.,
supra, is still recognized and followed in this jurisdiction.
Indeed, so carefully has it been adhered to by this court,
that in the very recent case of Lexington & Eastern Ry.
Co. v. Breathitt County Board of Ed., 176 Ky. 541, it was
applied to prevent the railroad company, which under-
took to construct its track across a lot over which it had

acquired no right of way, from excusing its act in so doing upon the ground that because the acts of trespass were committed by an independent contractor, the latter and not the railroad company was responsible for the resulting damages. Although judgment went against the railroad company alone for the damages claimed by the landowner, it was declared in the opinion that the independent contractor, who was not sued, might have been held equally liable for same. In view of the foregoing authorities, we think appellants' contention as to the nonliability of the appellant Bluegrass Coal Co. is without merit; and if right in this conclusion, it necessarily follows, that their complaint of the failure of the trial court to give the peremptory instruction asked, directing a verdict for the Bluegrass Coal Co., is equally without merit.

Appellants object to the instruction given by the trial court on the measure of damages. It does not seem to be claimed by their counsel that the instruction does not correctly state the measure of damages that would be applicable to a case of trespass or continued trespasses to realty, amounting to such a taking of or injury to it as would violate the provisions of the Constitution, *supra,* but they insist that this is not that character of case, and that if damages were recoverable in the case at all, they were and are only such as might be assessed and awarded in a proceeding to condemn the land for appellants' railroad under the power of eminent domain, as provided by Ky. Stats., sections 835-840, inclusive. We are unable to sustain this contention. The appellant, Hazard Dean Coal Co., before entering upon appellees' land or beginning its construction of its railroad thereon, and the appellant Bluegrass Coal Co., folowing its purchase of the property and franchise of that company and before taking possession of the railroad, might have instituted the necessary proceedings to condemn enough of appellees' land for a bed and right of way for the railroad and thereby secured the desired quantity of land, upon compensating appellees therefor in the amount determined in the condemnation proceedings. But having failed to take this course and followed an illegal one in obtaining the land, they can not complain that they were proceeded against by appellees as trespassers, or that they were required by the trial court and jury to respond as such, in

damages measured by the standard that must be applied for a wrongful appropriation of the land of another and such consequential damages as directly result therefrom.

It is not to be overlooked that appellants' railroad is not a common carrier, running from one commercial center to another. It is but a spur track or branch road of a few hundred yards in length, used solely by appellants, or at present by the Bluegrass Coal Co., for transporting its coal from the mine to the railroad of the Lexington & Eastern Railway Co. for shipment to various places of market. The public can ship nothing over it, and its operation, even in the absence of the evils that are shown to have resulted from its existence, can add nothing to the value of appellees' land or to their advantage.

While the instruction as to the measure of damages is in some respects awkwardly worded, it seems to set forth with substantial accuracy all the elements proper to be considered by the jury in fixing the damages as a whole, and contains nothing that should have been excluded from their consideration, or that might serve to mislead them.

In looking to the evidence we find that much of it conduced to prove that the market value of appellees' land has been greatly lessened by the construction and operation of appellants' railroad upon it; that the fill, ten feet in height, constituting in the main the bed of the railroad on appellees' land, and which borders the road or street and separates the remainder of the land from it, so greatly obstructs the way as to constitute almost a complete barrier to all means of ingress and egress to and from the land at any convenient point. In addition to this proof, there was other evidence as to the value of the land taken for and actually occupied by the railroad and also as to the destruction of appellees' spring by the dirt with which it was filled by appellants in building and maintaining the railroad. Evidence introduced for appellants tended to contradict that of appellees as to the question of damages, but this contrariety of evidence required the submission of the case to the jury. Considering the evidence respecting the conditions referred to and the extent to which they were shown to have affected and lessened the market value of the property, we are not prepared to say that the damages awarded appellees by the jury were excessive.

We do not overlook the fact that there was some evidence in behalf of appellants tending to show that Jere McIntosh, the husband of Jane McIntosh, owner of the land, had knowledge of the appropriation of the land for the railroad, and that he consented to look to D. Y. Combs for compensation for the land taken, but Jere McIntosh denied that he agreed to look to Combs for compensation, and it was also denied by Combs and other witnesses as well. Besides, the evidence fails to show any knowledge on the part of Jane McIntosh, owner of the land, of its appropriation for the railroad until after the railroad was constructed; and none whatever that she consented to such appropriation of her land, that she agreed to look to Combs for compensation or that her husband was authorized by her to consent that she would look to Combs for such compensation. Even consent on the part of the husband to the taking of the land for the railroad would not have been binding on the wife.

It is earnestly insisted for appellants that the trial court erred in not directing a verdict in their favor against D. Y. Combs. This contention is based on the following clause found in the written lease from Combs and wife to Jones and other lessors of the Hazard Dean Coal Co., whereby the latter acquired the Hazard Mine, which other property and franchise lease it in turn as-signed to the Bluegrass Coal Co.

"Further the lessors (D. Y. Combs and wife) cov-enant, agree and bind themselves to furnish to the lessee a right of way for a railroad track, as located by the lessee's civil engineers, up to a point on Messer branch, wherever they may locate their tail tracks and tipples."

It is alleged in appellants' cross-petitions against Combs, and certain evidence introduced by them con-duced to prove, that he did furnish to the Hazard Dean Coal Co., as located by its engineers, the right of way for its railroad, which included the land taken from Jane McIntosh. On this point the great weight of the evidence seems to be that Combs furnished the entire right of way for the railroad as located by appellants' engineers, but that when appellees' land was reached, instead of locat-ing the right of way upon any part of it, it was by his direction located by the engineer on adjoining land of Johnson and Johnson, which Combs had obtained for the purpose; but that thereafter appellants' engineer, with-out his knowledge or consent and without that of Jane

McIntosh, changed the location of the right of way for the railroad across Messer branch to her land and later constructed the railroad on her land at that point. This issue of fact thus arising between appellant and Combs was submitted to the jury under proper instructions and the jury returned a verdict for Combs. As the verdict is sustained by the evidence no reason is apparent for disturbing it.

In this connection appellants' complaint of the court's refusal of an instruction asked by them on the issue between them and Combs, will be noticed. The instruction if given would have been mere surplusage, as what it contained was in substance embraced in instruction No. 3, which was given to the jury. This instruction, after setting forth the clause in the lease whereby Combs undertook to furnish the right of way for the railroad track, advised the jury as follows:

"And if you shall further believe from the evidence that said right of way included the strips of land taken of the plaintiff (Jane McIntosh); and if you shall believe from the evidence that a portion of the plaintiffs' land was so taken by the fill and railroad mentioned by them in their evidence, then you will find for the defendants, Hazard Dean Coal Co. and the Bluegrass Coal Co., assignee of the Hazard Dean Coal Co., in the same amount as you found for plaintiffs against the Hazard Dean Coal Co. Unless you so believe, you will find for D. Y. Combs against the Hazard Dean Coal Co."

This instruction stated the law on the issue triable as to Combs as clearly as the one offered by appellants would have done if given; hence, the refusal by the court of the one asked was not error.

Our examination of the record fails to convince us of any material error in the admission or rejection of evidence. As in the trial of all such cases, some incompetent evidence crept in; but nothing of an incompetent character was admitted that can be said to have prejudiced any substantial right of the appellants.

We have not discussed the issues made by the pleadings affecting the Lexington & Eastern Railway Co., as the verdict returned in its behalf by the jury is not complained of and no appeal or cross-appeal has been taken from the judgment dismissing the action as to it.

The record furnishes no legal cause for disturbing the verdict returned, therefore the judgment is affirmed.