## Fidelity-Phenix Fire Insurance Company of New York v. Henry et al. (three cases).

## Continental Insurance Company of New York v. Lisman et al.

(Decided May 2, 1933.)

OWEN S. LEE and C. W. BENNETT for appellants.

WITHERS & LISMAN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

These cases are before us either on appeal, or on motion for appeal from judgments rendered in actions to recover on policies insuring tobacco against damage by hail.

At the outset we are met by the contention that the court erred in trying the several cases together over the objection of appellants. We are committed to the rule that the practice of trying cases together when they arise out of the same facts, and the parties are substantially the same, is not only proper, but should be encouraged, but even cases coming within the rule should not be tried together if it appears that some undue advantage may be obtained by one side or the other by reason of the joint trial. Benge's Adm'r v. Fouts, 163 Ky. 796, 174 S. W. 510; Sheetinger v. Daw-

son, 236 Ky. 571, 33 S. W. (2d) 609. Here the suits were on separate policies covering separate crops of tobacco. There was no identity of issues or of subject-matter. Each case turned on the damage to the particular crop involved, and the mere fact that each crop was destroyed by the same hailstorm did not produce a situation where the facts were the same. Moreover, the plaintiffs in each case had the benefit not only of the evidence of damage to their crops, but of the evidence of damage to other crops, the cumulative effect of which was to give them an undue advantage over the defendants. We are therefore constrained to the view that the court abused a sound discretion in trying the cases together.

As the actions must be tried again, it becomes necessary to pass on other questions.

Each of the policies insures "against loss and damage caused directly, immediately, exclusively, and not consequentially, by hail to growing tobacco." Among other provisions under "Policy Stipulations and Agreements" are the following:

"If the total insurance on this crop shall exceed the maximum limits permitted hereunder, the company shall on demand refund the premium on such excess.

"It is understood and agreed that 'market value' or anticipated profit or loss are not elements in fixing loss or liability under this policy, but loss hereunder shall be determined as hereinafter stated.

"For adjustment purposes, the value of the tobacco per acre hereby insured is agreed to be the aggregate amount of limit of liability per acre. In the event of the partial loss (regardless of the stage of growth or number of leaves actually produced and in evidence at the time of loss), it is agreed that the liability of this company shall be a percentage of the aggregate amount of limit of liability per acre, calculated as follows: By actual count (using a sufficient number of plants to obtain an average) if the tobacco had been 'topped.' If the tobacco has not been 'topped' then by the agreed prospective leaf production of mature plants, which it is agreed to be the number of leaves at

which the plant would be 'topped' in usual course of cultivation, ascertain the average leaf production per plant of the crop.

"It is understood and agreed that the leaf is the unit of value, and the measure of damage. The value of each leaf of the crop as fixed by this policy shall be ascertained by dividing the total of all insurance carried per acre by the average number of matured leaves per plant. For example, if the yield will average 10 matured leaves throughout the crop, and an average of one leaf per plant is totally destroyed, then 1/10 of the crop is destroyed and the amount of loss and damage would equal 1/10 of the total insurance per acre.

"If a fractional part of one leaf is destroyed, the loss and damage shall be in proportion. It is agreed that if a leaf is severed, or practically so, at or near the stalk, by hail, and in consequence will not mature, that such leaf is totally destroyed, but if the breakage is a fractional part of a leaf, then the loss and damage shall be in proportion.

"It is hereby understood and agreed that each of the following numbers and sizes of hail punctures shall constitute the total destruction of one leaf:

"Large, (relatively ¾ in diameter) 50 punctures to the leaf.

"Medium, (relatively ½ in diameter) 75 punctures to the leaf.

"Small, (relatively ¼ in diameter) 150 punctures to the leaf.

"A less number of punctures to the leaf than named herein to be in proportion as the actual number of punctures to the leaf, of the relative size referred to above, bears to the whole number of punctures required to destroy one leaf.

"In determining the amount of loss and damage, if any, it is understood and agreed that the crop of tobacco hereby insured, shall contain the average number of sound plants per acre as are usually grown in the same locality. All or any part of the crop affected by bad stand, waste land, or

the elements (except hail) shall be eliminated. Also if all or any part of the crop is seriously affected by wildfire, root rot, rust or other disease, that part of crop so affected, shall be excluded, and this insurance be reduced in proportion.''

With varying amounts, the instructions in each case are as follows:

''I. Under the policy sued on the value of the plaintiffs' crop of tobacco is fixed at $100.00 per acre, which is the standard of value you will use in determining the measure of damage to the said crop, if you find a verdict for the plaintiffs.

''II. If you shall believe from the evidence that the tobacco crop of the plaintiffs which was covered, if it was, by the policy exhibited in the evidence, was damaged as the result of a hail storm on or about the 11th day of August, 1931, you will find your verdict for the plaintiffs and award them such a sum in damages as will, in your opinion, fairly and reasonably compensate them for such damage, if any, as you may believe from the evidence was caused directly and exclusively by hail, not to exceed $100.00 per acre nor upon the whole case the sum of $466.00 the amount claimed in the petition.

''In arriving at the amount of damage, if you find any damage you will consider the leaf of the tobacco as the unit of value and the measure of damage; and the value of each leaf you will ascertain by dividing the said sum of $100.00 per acre by the average number of matured leaves per plant. For example: 'If the plants have an average of 10 matured leaves throughout the crop and an average of one leaf per plant is wholly or partially destroyed, then one-tenth of the crop is wholly or partially destroyed.'

''Unless you believe and find as above provided you will find your verdict for the defendants.

''III. It is agreed and is a part of the policy contract, that there is a total destruction of a leaf of tobacco where same has in it, caused by hail, 50 punctures approximately ¾ inch in diameter, or 75 punctures approximately ½ inch in diameter, or

150 punctures approximately ¼ inch in diameter, and a less number of such punctures to the leaf would damage it in proportion as such less number bears to the number required for its total destruction. But if you shall find that leaves have been damaged or destroyed by a less number of punctures than above set out, you are authorized to compensate plaintiffs for such damage or destruction, provided such damage or destruction is due to hail.

"IV. As many as nine jurors may make a verdict in this case, but a verdict by less than the whole panel must be signed by those jurors agreeing thereto."

In each case the insurance company offered instructions in the language of the policy.

Particular complaint is made of the fact that the court in the admission of evidence ruled that the method of fixing the loss prescribed by the policy was not exclusive, and that this view of the law was carried into effect by the addition of the following to instruction No. 3:

"But if you shall find that leaves have been damaged or destroyed by a less number of punctures than above set out, you are authorized to compensate plaintiffs for such damage or destruction provided such damage or destruction is due to hail."

Ordinarily, of course, where the method of computing the loss is fixed by the policy, that method should be followed, and the court should so instruct (Glandon v. Farmers' Mutual Hail Ins. Ass'n of Iowa, 211 Iowa 60, 232 N. W. 804; McIlrath v. Farmers' Mutual Hail Ins. Ass'n, 114 Iowa 244, 86 N. W. 310); but, inasmuch as the policy insures against damage by hail, we are not disposed to a view that would defeat the purpose of the policy and restrict the jury in computing the loss to a method not meeting all conditions, and which it would be practically impossible to apply. Under the policy there is a total destruction of a leaf of tobacco where it has 50 punctures approximately ¾ of an inch in diameter, or 75 punctures approximately ½ inch in diameter, or 150 punctures approximately ¼ inch in diameter, and the damage by a less number of punctures is in the proportion that such less number bears

to the number required for total destruction. Hail-stones are not always of the same size, and do not fall the same distance apart. They may be of such large size or may fall together in such a way that very few holes may destroy the entire leaf. The policy method meets the situation where the less number of punctures results in the partial destruction of the leaf, or in damage less than that occasioned by a greater number, but it does not cover a case where a less number of punctures completely destroys the leaf, or results in damage greater than that occasioned by the larger num-ber of punctures mentioned in the policy. That being true, it was not error for the court to add to instruction No. 3 the words above quoted, and thus provide for a situation to which it was wholly impracticable to apply the policy method of computing the loss.

Another contention is that the court erred in per-mitting the different witnesses to give their estimate of the amount of damage. Unlike other courts, we have not adopted the rule that, in actions for damages to crops, where the criterion is the market value of that portion of the crop destroyed, opinion evidence as to the amount of damage is inadmissible, but are commit-ted to the doctrine that witnesses who are farmers may testify to the amount of damages caused by floodings. Madisonville, H. & E. R. Co. v. Renfro (Ky.) 127 S. W. 508. However, there is room for distinction where it is sought to recover on a hail policy like the one here in-volved, for no question of market value is presented, but the damage is computed on the percentage basis, and the per cent. or extent of the loss is the vital issue and the ultimate fact for the jury to determine. Beam v. Farmers' Union Mutual Hail Ins. Co., 127 Kan. 234, 273 P. 440, 62 A. L. R. 211. When the rulings of the court are considered in connection with its admonitions to the jury, it may be doubted if there was a sufficient departure from the rule to authorize a reversal. On another trial the court will confine the evidence to a description of the actual conditions that the witnesses observed.

The further point is made that the three Fidelity-Phenix Fire Insurance policies were voided by false swearing and concealment of interest. With respect to the claim of false swearing in the proofs of loss, it is sufficient to say that this defense was not presented by

pleading. With respect to the contention that the insured concealed from the company the fact that G. L. Withers was a part owner of the tobacco, the uncontradicted evidence is to the effect that the local agent was informed before the policies were written that Mr. Withers had a half interest in the tobacco, and with this knowledge he prepared and signed the policies in question. It is clear, therefore, that there was no concealment, and, if any mistake in writing the policies was made, it was a mistake of the local agent and not that of the insured.

There is also the insistence that the insured were estopped from prosecuting the actions because of their refusal to submit to an appraisal of the loss. Respecting the appraisal of loss, each of the policies contains the following provision: "In the event of disagreement, in case of loss, as to the amount of loss, such disagreement shall, at the request of either the company or the insured, be ascertained by two competent and disinterested appraisers, whose apointment shall be made within ten (10) days after request for appraisal, and shall, if requested, be agreed to in writing; the insured and this company each selecting one, and the two so chosen selecting a competent and disinterested umpire; the appraisers together shall then appraise the matters submitted and, failing to agree, shall submit the subject of difference to the umpire; and the award, in writing under oath, of any two of them shall be conclusive. The appraisers shall determine the amount of loss in accordance with the method provided in this policy and shall appraise and make their award separately per acre or part thereof, stating in the award the basis upon which the average is arrived at, for which purpose a diagram (made by a competent surveyor if requested) shall be used, showing the outline and location of the field on which crop is grown, upon which the appraisers shall mark the areas similarly damaged, showing the average number and size of punctures and the tests by which such average was deduced, and such diagram so marked shall be made a part of the award. The parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expense of the survey, appraisal and umpire. The insured shall have no right of abandonment of crop."

Some time after the hailstorm, the insurance com-

panies requested an appraisal of the loss, and followed it up with a blank form providing for the appointment of appraisers. After that the companies appointed as their appraiser a Mr. J. T. Wilson, who was an adjuster for the companies, and who had adjusted other losses during that season. For this reason the insured insisted that he was not an impartial arbitrator, and stated further that it was necessary before signing the appraisal agreement that they should reduce to writing the matters to be submitted. At the same time they appointed C. L. Ramsey as their appraiser. Later on they tendered an appraisal agreement based on their construction of the contract, to which the companies did not agree. After that no further steps were taken. Viewing the action of the parties in the light of all that occurred, we are constrained to the view that the facts of this case bring it within the rule that, where a policy provides for an arbitration of losses as a condition precedent to suit on the policy, but the parties differ as to the meaning of the policy, and are therefore unable to reach an arbitration agreement, the insured may bring an action to recover his loss on the ground that he had made a good faith attempt to comply with the arbitration clause without success. National Fire Insurance Co. v. Pinnell, 199 Ky. 624, 251 S. W. 651. It follows that the court did not err in so holding.

In view of the conclusion of the court, it becomes unnecessary to pass on the other grounds urged for reversal.

On the appeal of the Continental Insurance Company, appellees make the point that this court is without jurisdiction. The point is well taken. The petition alleged that the crops of tobacco were damaged in the sum of $473.40, and sought a recovery of that amount. It is true that in the first paragraph of its answer the insurance company denied that the crops were damaged in that amount, or in any other sum, but it went further, and in paragraph 2 of its answer alleged "that upon the basis of $100.00 per acre (the amount fixed by the policy) the total amount of damage was $220.-20," and admitted in its evidence that "the total loss on the six acres figured $220.20." The amount of the judgment was $400. In the circumstances the amount in controversy is the difference between the admitted

liability of $220.20 and $400, the amount of the judgment, or the sum of $179.80, which is insufficient to confer jurisdiction. Rockport Coal Co. v. Carter, 147 Ky. 50, 143 S. W. 772.

Wherefore the appeal of the Continental Insurance Company is denied, and the judgment is affirmed.

On the three appeals of the Fidelity-Phenix Fire Insurance Company, the judgments are reversed, and the causes remanded for a new trial consistent with this opinion.