## City of Ashland v. Queen et al., and seven other cases.

(Decided April 17, 1934.)

R. CAMPBELL VAN SANT for appellant.

WOODS, STEWART, NICKELL & SMOOT for appellees B. F. Thomas, T. A. Queen and others.

JOHN T. DIEDERICH for appellees J. A. Sewell and others.

YAGER & WOODS for appellees Alice Brown and others.

THOMAS BURCHETT for appellee Boyd County.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming in part and reversing in part.

These four separate suits for damages suffered by the erection of a viaduct in front of plaintiffs' property were brought against the city of Ashland, Boyd county, and the state highway commission. The special demurrer of the commission was sustained, and it is out

of the case. A peremptory instruction was given for the county. Upon verdicts in the joint trial, judgments were rendered against the city. The city appeals against the plaintiffs, and the plaintiffs appeal from the order discharging the county from liability.

Winchester avenue in Ashland is 60 feet wide, but before this work was begun the paving was only 20 feet in width in front of plaintiffs' property, which is on the north side. There was a 5-foot sidewalk and a grass plot between the street paving and the property line. About a quarter of a mile west of plaintiffs' property the street went under the tracks of the Chesapeake & Ohio Railway Company for quite a long way. This underpass was within the city limits. The street continued as the state highway across other tracks at grade and a creek and then around a hill. During high water in the Ohio river the underpass would often become flooded. The traffic was very heavy and the roadway was inadequate. The viaduct was built to eliminate these several conditions within and without the city limits. It is about 30 feet wide, and is in the center of the street, leaving a roadway on either side on the original grade from 14 to 23 feet wide, which will be, or has been, paved with concrete. It is not clear whether or not the avenue will cease to be a thoroughfare by the closing of the railroad crossing at grade. The incline begins near Fifth street and rises on solid masonry for a short distance, and then is built on steel piers upon concrete bases. Where it passes the plaintiffs' property it is on such trestle, approximately 32 feet high, and the roadway floor is about the top of the second-story windows.

The work was done under an agreement signed by the highway commission, the county, the city, the Chesapeake & Ohio Railway Company, and the American Rolling Mill Company. It provided in substance that the plans and specifications should be prepared by the highway commission and approved by the superintendent of public works and the engineer of the city and by the railway company, and the contract let by the commission. The construction was under the supervision of the commission and the railway company, who jointly agreed to maintain the structure as provided by the statutes governing the elimination of grade crossings and the maintenance of such viaducts. In part payment of the construction costs, the railway company agreed to con-

tribute $125,000, the city of Ashland $25,000, and the American Rolling Mill Company $10,000. Boyd county also obligated itself to contribute $25,000 to the cost of the improvement, and in addition to acquire and pay for the required rights of way, except the easement over the railway company's property which it would grant. It was stipulated that Winchester avenue north of the viaduct should not be closed or abandoned at any future time.

The plaintiffs severally alleged damages to their property by reason of the structure and the elevation of the highway above the grade of the street, which had been previously established by the city and paved at the expense of the abutting property, in that the way of ingress and egress was destroyed; the light and air shut out from the dwellings; dust and cinders were cast upon and in the buildings; noise and vibrations affected the property; obnoxious odors from motor vehicles permeated the buildings; and their privacy was destroyed. Liability of the city and the county was and is charged to be joint and concurrent, it being alleged that it was the duty of the county to furnish the right of way for the construction of the state highway and pay for all resulting damages, and that the city had changed the grade of the street, or authorized the change. The several allegations of the petitions were traversed, including the charge that the city had entered into the contract as interpreted by plaintiffs.

The city takes the position that it had nothing to do with the erection of the viaduct except to make a contribution to its cost and to exercise the privilege granted it by the commission of approving the plans. It is argued that the city was without power to forbid, and consequently to permit, the improvement, since the commission had plenary power to construct that part of the state highway passing through the city as it desired, and that both under the statute (section 4356t-7) and the contract the duty devolved upon the county exclusively to furnish the right of way for this project, which included damages to adjacent property. The city maintains that it was not directly interested, as the purpose of the undertaking was to eliminate the grade crossing outside of the city limits; that the change was for the benefit of the general public and the railway company, as the structure (which extends beyond the boundary) does not serve the city or its inhabitants in any special

or peculiar way; that it is purely and exclusively a state highway superimposed upon its street; that the city has no control over it, and no part of the viaduct can ever become a street of the city nor be used for city purposes, which fact is emphasized, it is argued, by the agreement that the highway commission should always maintain and keep the viaduct in repair and that the city should not in the future close or abandon Winchester avenue as a public street. It is pointed out also that the avenue on either side of the viaduct has been repaved with concrete at the original grade, and that it yet constitutes the street rather than does the superstructure.

The defense of the county is that it was not required under the law to furnish a right of way for the state highway within the limits of a second class city, and the contract contemplated that the county would furnish only the right of way outside of the city limits. It is more positively charged that the city has exclusive control over its streets even where they constitute a section of a state highway. In support of this argument, there are cited sections 1851, 3094, 3095, 3096, 3104a-1, 2 and 3, 4293, 4294, and 4295, of the Statutes. Other defenses raised by the county are that the fiscal court did not authorize the execution of the contract, and that the appropriation or promise to contribute $25,000 to the cost of construction was invalid because the indebtedness of the county exceeded its current income for any one year.

We think the contention of the plaintiffs that this was a joint undertaking and that both the county and city are liable for the resulting damages is sound. There is no dispute that under section 242 of the Constitution municipal corporations and others invested with the privilege of taking private property for public use must make just compensation for property taken or injured by them. The major question presented in the case is which of these municipalities is liable or whether both of them are accountable for the resulting damages.

It cannot be said that the county is solely responsible under the statute requiring that counties shall furnish the rights of way for state roads. Section 4356t-7. This project upon which both the city and county entered involved much more than the mere procurement of a right of way. The city was an active participant in the construction. We cannot agree with its counsel

that the provision for the approval of the plans by the city's officers was solely a condition precedent to the making of the contribution to the cost. It does not say so; and a consideration of the whole contract and the situation to be remedied negatives such limitation. These plans were not only approved by the designated officials, but accepted by an ordinance. The city paid part of the cost and had the structure built in the center of its street, thereby materially obstructing and changing in part the grade of the street which had been formally dedicated, established, and built years before at the expense of the abutting property. Whether the highway commission had such superior right or plenary power as to have proceeded with the construction regardless of the city's objection is not here a matter of concern. The city did authorize the use of its street, and in effect constituted the highway commission as its agent to do the work according to the plans which it accepted. It appears that this much-needed and monumental improvement was made after several years of study and effort on the part of the city officials and others interested. Ashland greatly wanted it, for this is one of the main highways entering the city, and is the lane of travel for its largest industry, employing from 2,500 to 3,000 employees. The city did receive substantial benefits through the elimination of a dangerous underpass, which sometimes became impassable through flooding, and three-fourths of a mile of street inadequate for the heavy traffic was made adequate. The fact that the floor is elevated on trestle work does not change the structure from the nature of a street.

It has long been held that compensation may be recovered of a city for damages resulting to adjacent property by the regrading of an established street or by making and using an improvement for public purposes. Board of Councilmen of City of Frankfort v. Edelin, 82 S. W. 279, 26 Ky. Law Rep. 601; City of Owensboro v. Hope, 128 Ky. 524, 108 S. W. 873, 33 Ky. Law Rep. 375, 15 L. R. A. (N. S.) 996; City of Dayton v. Rewald, 168 Ky. 398, 182 S. W. 931; City of Paducah v. Allen, 111 Ky. 361, 63 S. W. 981, 23 Ky. Law Rep. 701, 98 Am. St. Rep. 422; Richmond & L. Turnpike Company v. Madison County Fiscal Court, 114 Ky. 351, 70 S. W. 1044, 24 Ky. Law Rep. 1260; Big Sandy Railway Company v. Dils, 120 Ky. 563, 87 S. W. 310, 27 Ky. Law Rep. 952.

In so far as the city of Ashland is concerned, this case is not materially different from Chesapeake & O. Railway Company v. Wadsworth Electric Mfg. Company, 234 Ky. 645, 29 S. W. (2d) 650. A viaduct had been built by certain railway companies under a contract between the city of Covington and themselves to eliminate a grade crossing, which called for the changing of established grades of two streets. The lessee of abutting property recovered judgment against the city and the railway companies for damages resulting from that improvement. The companies on appeal contended that the city alone could be held liable because the statutes vested in the city exclusive power and control over its streets, including their alteration, crossing, and grading, and particularly the authority to direct and control the construction of railroad tracks, bridges and kindred matters. In the course of the opinion, it is pointed out that, when abutting property is injured so as to constitute a taking thereof for road construction, both the municipal corporation and the contractor are liable to the owner. Lexington & Eastern Railway Company v. Breathitt County Board of Education, 176 Ky. 541, 195 S. W. 1094; Adams & Sullivan v. Sengel, 177 Ky. 535, 197 S. W. 974, 7 A. L. R. 268; Black Mountain Corporation v. Houston, 211 Ky. 621, 277 S. W. 993; Terhune v. Gorham, 225 Ky. 249, 8 S. W. (2d) 431. See, also, Hazard Dean Coal Company v. McIntosh, 183 Ky. 316, 209 S. W. 364. Upon a number of cases of this court, it was declared in the Wadsworth Electric Company opinion to be a settled principle that a city may not confer upon others any right in the streets exclusive of the public, and that such attempted grant is no protection against a suit for injuries to private property. So in construing section 242 of the Constitution, and in defining the rights of the owners of property injured, it was held that damages may be demanded from all who participate in the taking of the property and that the injured party is not required to look to one of them alone. See, also, as pertinent to several points under discussion, Chesapeake & O. Railway Company v. Eastham, 249 Ky. 136, 60 S. W. (2d) 361.

With respect to the county, it is clear that, where there are resulting injuries which are of the nature of a taking of private property by the proper construction of a state highway, the county is liable. Harlan County v. Cole, 218 Ky. 819, 292 S. W. 501, 502, and cases, supra.

In Perry County v. Townes, 228 Ky. 608, 15 S. W. (2d) 521, where the county was not a specific party to the work of construction of a portion of a state highway through the city of Hazard, it was held accountable for damages resulting to adjacent private property by reason thereof under the provisions of sections 4356t-7 and 4356t-8 of the Statutes. Counsel for Boyd county submit that, by chapter 178 of the Acts of 1928, section 4356t-8 was amended so as to relieve the county of responsibility of acquiring a right of way or from consequential damages, as in the Perry County Case, in any city except those of the fifth and sixth classes, because the intention of the amendment was to confine the highway commission to building roads through cities of those two classes only. On the contrary, counsel for the city argue that such amendment had the effect of making it mandatory on the part of the highway commission to build streets in those cities, and left it discretionary with the commission as to building streets in other cities. Whether that amendment or any present statutes have the effect of confining the obligations of the state highway commission and the several counties to the construction of streets in the fifth and sixth class cities need not here be determined. Certain it is, however, that various statutes upon which the county relies as excluding it from exercising any powers, and consequently assuming or incurring liabilities, within the corporate limits of a second class city (as is Ashland), must be read in connection with other statutes and judicial pronouncements relating to the dual operations of the two municipalities and the co-ordinate obligations of a county and a city, and as well the letter and the intent of the several laws relating to the system of state highways. Cf. City of Pineville v. Robbins, 232 Ky. 218, 22 S. W. (2d) 607, and the cases cited therein. The county undoubtedly had the power to join in the contract and agree to acquire the rights of way and contribute to the cost of the improvement, a substantial, if not the greater, part of which is outside the city limits. The fact that a portion is within the city does not seem to make any difference. The county did agree to furnish all rights of way excepting only the easement over the railway company's property. There is no exception as to that portion of the right of way within the city limits. But, as indicated above, that obligation is not single nor so exclusive as to relieve the city of its responsibility for the resulting damage.

Without further elaboration, it is the conclusion of the court that the county is jointly liable with the city for whatever damage resulted from this construction, and hence that the trial court was in error in holding it to be otherwise, unless the county can escape on other grounds.

We do not regard as meritorious the claim that the county judge was not legally authorized to execute the contract for this undertaking. An order was duly entered by the fiscal court specifically accepting the proposition of the other parties to build this structure and ratifying an order of the former fiscal court appropriating $25,000 and further appropriating $17,000 for rights of way. The appropriations, however, were conditioned upon the county attorney giving an opinion that they were legal. Another order accepted the opinion of the county attorney as to the legality of issuing the warrants, but the record does not contain that opinion. In view of the numerous subsequent orders providing for the acquisition and payment of rights of way, it may be assumed that this opinion was favorable. Although the county judge was not directed in so many words to sign the contract, the fiscal court did specifically and formally accept the proposal of the other parties, and its subsequent orders and acts ratified the execution of the contract by the county judge for and in behalf of the county.

Since the county was dismissed upon the plaintiffs' evidence, it was not called upon to prove its plea that the contribution to the cost of the project was illegal as being in excess of current revenues. That matter is not now before us.

Coming back to the appeal of the city. It is urged that the refusal to grant it a continuance of the trials because the work was not completed and the damages were necessarily speculative was error. It is shown that the viaduct had been substantially finished and only the lights were to be installed. The street at the grade in front of the plaintiffs' property, however, was still torn up and the paving thereof had yet to be laid. The time as of which the damages were to be fixed was when it became generally known that the viaduct was to be built, as is more fully stated later in the opinion. The work had so far progressed that the court was justified in overruling the motions for a continuance on the ground stated.

Over the objection of the city, the court, on its own motion, consolidated the four cases for the purpose of the trial, and this, it is submitted, was a prejudicial error. Our recent opinions hold it to be the proper practice to try cases together when they arise out of the same facts and the parties are substantially the same, unless it appears that some undue advantage may be obtained by one side or the other by reason of the joint trial. Sheetinger v. Dawson, 236 Ky. 571, 33 S. W. (2d) 609; Warfield Natural Gas Company v. Wright, 246 Ky. 208, 54 S. W. (2d) 666; Fidelity-Phoenix Fire Insurance Company v. Henry, 248 Ky. 818, 60 S. W. (2d) 111. In the first and third of these cases, it was held under the circumstances that a joint trial was improper as giving to the plaintiffs an advantage, and the city insists that it has suffered from a like error. The advantages claimed to have resulted to the plaintiffs here are that they enjoyed the combined services of four groups of lawyers representing the several plaintiffs, the appearance of corroboration and the accumulative effect of the numerous witnesses, and the argument of three attorneys as against the defendant's one counsel. Up to the close of the plaintiffs' evidence there were two defendants with a union of their attorneys' services on that side of the case. Under some circumstances, it may be prejudicial error to require a joint trial where there is a multiplicity of parties on the one side who are represented by separate counsel, but the results of this trial do not indicate that there was any undue advantage obtained by the plaintiffs. We are of the opinion that no prejudicial error was committed in this respect.

Complaint is registered against an instruction, the substance of which was to authorize a verdict for the plaintiffs if the jury believed that the city had by resolution or ordinance permitted or authorized the erection of the viaduct in or on its street. It is argued that this left to the jury the construction of the ordinances and of the contract, and also whether the avenue had been elevated when there was no evidence, as the city contends, that it was so elevated; it being argued that the structure is in the street and is not the street. Whether this instruction was right or wrong, the city was not hurt, for we think the court should have held as a matter of law that the city was jointly liable for whatever damages the jury should believe had been sustained.

The instruction on the measure of damages follows

pretty closely that copied in Chesapeake & O. Railway Company v. Smith, 51 S. W. 12, 21 Ky. Law Rep. 175, and held to be correct. It is a little cumbersome in form, but contains the essential elements. We have a number of cases declaring that, where there is an injury to real estate by reason of a permanent structure, the measure of damages is the depreciation in the market value, and that is said to be the difference between the value of the property before it became generally known that the structure would be built and its value just after completion. City of Louisville v. Caron, 28 Ky. Law Rep. 844, 90 S. W. 604; King v. Board of Council of City of Danville, 128 Ky. 321, 107 S. W. 1189, 32 Ky. Law Rep. 1188; Chesapeake & O. Railway Company v. Stein, 142 Ky. 515, 134 S. W. 1169; City of Louisville v. Sauter, 149 Ky. 721, 149 S. W. 1029; Trustees of Cincinnati Southern Railway Co. v. Hanks, 244 Ky. 618, 51 S. W. (2d) 915; Watson v. Chesapeake & O. Railway Company, 238 Ky. 31, 36 S. W. (2d) 641; Hutcherson v. L. & N. Railroad Company, 247 Ky. 317, 57 S. W. (2d) 12. It would seem sufficient to instruct the jury in the simpler form.

Finally, it is argued that the damages are excessive. The several plaintiffs lived in their property, and the houses were much alike, each being a two-story frame structure. The factual evidence is conclusive that their property has been materially damaged as the result of building this structure. Eight or ten witnesses, each fully qualified to express an opinion, gave their testimony as to the depreciation in the market value of the several properties. They ranged from $2,000 to $5,500. The principal contrary evidence was proof of the tax assessments, at much less value than was here claimed. The damages awarded to T. A. Queen were $1,850; to Ella Brown, $1,800; to J. A. Sewell, $1,716.76; and to B. F. Thomas, $1,500. A consideration of all the evidence convinces us that the damages allowed were reasonable.

For the reasons indicated, on the several appeals of the city of Ashland the judgments are affirmed; on the appeals of property holders against Boyd county, the several judgments are reversed.