# Bard v. Batsell, et al.

(Decided April 22, 1919.)

## Appeal from Fulton Circuit Court.

1. Easements—Passway—Maintenance of Gates.—Where by agreement land is divided between several joint owners, and a passway established over said lands for the benefit of the several owners, and gates maintained over the passway by the different owners, the grantee of any of such original owners may in like manner maintain a gate or gates.

2. Husband and Wife—Easements—Husband May Not Bind Wife as To.—Where the wife is the owner of the land, the husband is without power to bind the wife by writing to surrender her right to maintain gates over and across a passway through her land, unless the wife expressly consents thereto, or the husband is the authorized agent of the wife.

3. Frauds, Statute of—Easements.—A writing executed by the husband without consideration, agreeing to surrender the right of the wife as owner of the land to maintain gates across a passway through her lands, is not enforceable against the wife where not signed by her, as she is the party to be charged.

ED THOMAS for appellant.

H. T. SMITH for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In 1900 Taylor Bard died the owner of a large farm, situated partly on the north and partly on the south of the state road in Fulton county. He left surviving him a widow and several children, among whom the lands were afterwards allotted by agreement. The dower assigned to the widow was on the south side of the state road and contained about 70 acres. Adjoining this dower tract six lots were laid off and assigned to six children. Lot No. 4 adjoined the state road, but lots Nos. 5, 6, 7, 8 and 9 were off of any traveled way, and the heirs agreed among themselves that a passway should be established from lot No. 9, running with the west line of the dower tract and over lots Nos. 8, 7, 6, 5 and 4 to the state road, to give an outlet for the lots off of the traveled way. This passway was 16½ feet wide and about 300 yards long. The heirs as well as the widow took possession of the tracts allotted to them. Afterwards S. A. Bard purchased four of the lots adjoining his tract, and J. F. Bard, who owned lot No. 9, purchased from the heirs

the remainder estate in the dower tract, and occupied the dower tract with his mother until her death, and afterwards owned and controlled it absolutely, as well as lot No. 9, which was assigned to him as one of the children. The passway was used more or less by the heirs, but from the beginning one or more gates across it were maintained. As appellant J. F. Bard's dower tract fronted on the state road, he had little or no use for the passway, and it would appear that the passway was not originally intended for the use of the dower tract, but only for the shares allotted to the children which lay away from the public road. In 1911, S. A. Bard sold and conveyed all his interest including lots Nos. 4, 5, 6, 7 and 8 to Mrs. Mattie Batsell, and she and her husband immediately took possession of the farm and have since owned and held it. At the time Mrs. Batsell purchased the land there was one gate across the passway, but the existence of the passway was made known to her and her husband. On April 22, 1914, J. F. Bard, who owned the dower tract, and W. H. Batsell, the husband of the owner of the S. A. Bard lands, entered into the following agreement:

"This agreement entered in this day by and between J. F. Bard and W. H. Batsell of Fulton Co., Ky., agreed 1st: that the lane or passway running between our respective farms may be closed by placing one or more gates across same for the convenience and use of either party.

"2nd: It is further agreed that said gates must be removed at the request of either party.

"This agreement entered into this April 22, 1914. Witness our hands.

"W H. Batsell,
"J. F. Bard.

"Witness: W. L. Hampton."

Shortly after the execution of this writing J. F. Bard demanded that Batsell remove the gates from across the passway, and Batsell declining to do so Bard instituted this action in the Fulton circuit court against Batsell and wife to perpetually enjoin and restrain them from obstructing the passway, and from erecting or maintaining gates over and across the same, and to restrain and enjoin the Batsells from using the passway as a stock lot or hog pen, and from otherwise using it except as a walk or driveway. In the petition it was alleg-

ed that the Batsells were maintaining gates across the passway which obstructed the free use thereof by appellant Bard, and appellees were also using the road and passway as a stock lot or hog pen in which cattle and hogs were confined, and which created mud and filth amounting to a nuisance, all of which appellant Bard prayed the court to abate. The written agreement above set out was attached to and made a part of the petition.

The case was prepared by the taking of much evidence concerning the origin of the passway, its use and the maintenance of gates as well as concerning the execution of the agreement relied on by appellant. The cause being submitted, the chancellor dismissed plaintiff's petition absolutely, and adjudged Batsells, defendants, the right to maintain two gates across the passway. From this judgment Bard appeals.

The deeds under which appellant Bard claims the dower tract and lot No. 9, contains no reference to the right-of-way or road in controversy, but it is admitted that the heirs who were the original owners laid out and agreed upon the passway at the time the lands were subdivided; but appellees insist that each of the heirs to whom the lands were first allotted, reserved and had the right to erect and maintain as many gates over and across the passway as to them appeared necessary, and as grantees of said persons, appellees contend that they also are entitled to maintain one or more gates over and across the passway. Appellant insists that even though appellees' grantors had the right to maintain such gates, yet appellees surrendered such right by the execution of the agreement above quoted.

It can not be denied that the owners of lots Nos. 4, 5, 6, 7, 8 and 9 had the right to erect and maintain gates across the passway. In fact, the passway was over and across the lots allotted to these persons, and they did not surrender the lands, but only an easement therein to be used as a passway. Whatever right, if any, appellant Bard had to compel the discontinuance of gates across the passway, he acquired by reason of the agreement aforesaid. But this agreement it is contended by appellee is invalid; (1) because without consideration; and (2) because unilateral. So far as the record discloses there was no sufficient consideration for the execution of the agreement. But we think there is a better reason why this agreement must be rejected than either

of the ones stated, and that is because not signed or executed by Mrs. Mattie Batsell, the party owning the land over which the road passed. W. H. Batsell did not own the land or any interest therein so far as the record discloses, and it does not appear that he had any right to enter into the agreement with appellant Bard for the discontinuance of the gates. The husband has no power to bind the lands of the wife without express authority so to do. Hazard Dean Coal Co., et al. v. McIntosh, et al., 183 Ky. 316. The equities are all on the side of appellees, and the trial court did not err in its judgment, dismissing plaintiff's petition.

Judgment affirmed.