CASE 33—PETITION EQUITY—OCTOBER 17.

# Gargan, &c., v. Louisville, New Albany & Chicago Railway Company.

APPEAL FROM LOUISVILLE CHANCERY COURT.

RIGHT TO CLOSE STREET.—When the closing up of one end of a street or alley leaves to the owner of property bordering on the street or alley no convenient and reasonable means of access to other streets to which he has theretofore had convenient access, he is entitled to his action for damages; or the corporation, whether municipal or private, seeking to appropriate the street to its own use, must resort to the writ of *ad quod damnum*, and under it compensate the owner for the injury sustained. The city cannot, either for its own use, or for the use of a private corporation, appropriate the street to the injury of the property-holder without making just compensation.

DODD & GRUBBS FOR APPELLANTS.

1. The ordinance of November 5, 1886, did not authorize the city of Louisville to institute this action; it merely authorized the appearance of the city to be entered to any action that might be instituted to have the street closed.
2. The act of 1866 limited to the city alone the right to institute such a suit, and, therefore, said ordinance is in conflict with that statute. Statutory remedies in derogation of the common law must be strictly construed. (Pendleton v. Bank of Ky., 2 J. J. M., 149; Bishop on Written Laws, secs. 119, 155 and 193.)

Gargan, &c., v. Louisville, New Albany & Chicago Railway Co.

The title of the ordinance is in conflict with the body of the act, and must yield to the latter. (Commonwealth v. Cain, 14 Bush, 525.)

3. So much of the act of February 17, 1866, as attempted to authorize the Louisville Chancery Court to close a street running in front of the lots of property-owners on a square against their consent is in violation of sec. 14 of art. 13 of the Constitution of Ky., and of the last clause of the 5th amendment to the Federal Constitution. (Lex. & Ohio R. Co. v. Applegate, 8 Dana, 294; Wolfe v. Cov. & Lex. R. Co., 15 B. M., 404; Lex. & F. R. Co. v. Brown, 17 B. M., 763; Newp. & Cin. Bridge Co. v. Foote, 9 Bush, 264; Cosby v. O. & R. R. Co., 10 Bush, 288; Eliz., Lex. & B. S. R. Co. v. Combs, 10 Bush, 388; J., M. & I. R. Co. v. Esterle, 13 Bush, 667; L. & N. R. Co. v. Finley, 7 Ky. Law Rep., 132; Schneider v. Jacob, 9 Ky. Law Rep., 382; L. & N. R. Co. v. Finley, 9 Ky. Law Rep., 660; Keasy v. City of Louisville, 4 Dana, 154; City of Louisville v. Louisville Rolling Mill Co., 4 Bush, 416; Fulton v. Short Route Transfer Co., 9 Ky. Law Rep., 295; Hyland v. Short Route Transfer Co., 10 Ky. Law Rep.)

4. This record shows that this is in effect a suit by the railway company to appropriate this street to its exclusive use without making compensation therefor.

5. There is no evidence conducing to show that the closing of said street would be beneficial to the city of Louisville; while the evidence shows affirmatively that the proposed closing of the street would be injurious to appellants, and materially impair the value of their property.

CARY & SPINDLE and J. P. GREGORY on same side.

1. The city of Louisville can institute no suit unless expressly authorized to do so by her General Council, and the ordinance approved November 5, 1886, does not authorize the bringing of a suit. The title of an act cannot be used to extend or restrain the positive provisions contained in the body of the act. (Commonwealth v. Cain, 14 Bush, 525.)

2. The record shows that this suit is the outgrowth of an attempt on the part of the city's counsel to lend to the railroad company the extraordinary powers granted to the city as a public corporation, and to enable the railroad company to appropriate the property of appellants without making compensation therefor.

3. The act of 1866 does not contemplate the closing of principal streets of the city, but only such short streets or alleys as divide squares formed by principal streets.

4. So much of that act as attempts to authorize the taking of a property-holder's easement in a street without his consent, and without making compensation therefor, is unconstitutional and void. (Lex. & Ohio R.

Co. v. Applegate, 8 Dana, 294; Cosby v. O. & R. R. Co., 10 Bush, 288; Newport & Cin. Bridge Co. v. Foote, 9 Bush, 264; E., L. & B. S. R. Co. v. Esterle, 13 Bush, 667; City of Louisville v. Louisville Rolling Mill Co., 4 Bush, 416; Wolfe v. Cov. & Lex. R. Co., 15 B. M., 404; Lex. & Frankfort R. Co. v. Brown, 17 B. M., 763; Cosby v. C. & O. R. Co., 10 Bush, 288; Keasy v. City of Louisville, 4 Bush, 416; L. & N. R. Co. v. Finley, 7 Ky. Law Rep., 132; s. c., 9 Ky. Law Rep., 660.)

5. The municipality holds its streets and alleys in trust for the public use, and as such trustee has no right to use or dispose of such property for other purposes. (Dillon on Mun. Corp., sec. 650; Buckner v. Augusta, 1 A. K. Mar., 9; Augusta v. Perkins, 3 B. M., 441; Alves v. Henderson, 16 B. M., 169; St. Paul & Pacific R. Co. v. Schurmeir, 7 Wall., 272.)

6. There is no evidence in the record that shows the city will be benefited by closing Columbia street, and the preponderance of the testimony shows that appellants would be materially injured by such closing.

PATRICK JOYES ON SAME SIDE.

Brief not in record.

H. S. BARKER AND E. F. TRABUE FOR APPELLEES.

Brief not in record.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The charter of the city of Louisville provides "that said city may, at any time, institute suit in the Louisville Chancery Court for the purpose of closing up any of its streets or alleys dividing any of the squares or lots thereof, and to such suit all the owners of ground in the square or lot shall be made defendants, and if all such defendants are competent to act for themselves, and shall consent to the closing up prayed for, then the court shall render a decree accordingly; but without such consent said court shall hear the proof made by the parties, and, if satisfied that the closing up would be beneficial to said city and not injurious to any party not consenting, shall render a decree closing up such street or alley."

Gargan, &c., v. Louisville, New Albany & Chicago Railway Co.

An ordinance of the city of Louisville, approved on the 5th of November, 1886, reads: "*Be it ordained by the general council of the city of Louisville*, That the city attorney be, and he is hereby, authorized and directed to enter the appearance of the city of Louisville to any proceeding that may be instituted in court to procure Columbia street to be closed from the west side of Fourteenth street to the west side of the grounds of the Louisville, New Albany and Chicago Railway Company, and to consent, on behalf of said city in said proceeding, to said portion of said street being closed."

In a few days after the passage of this ordinance the city of Louisville instituted the present action, alleging that the closing up of said street as indicated in the ordinance would prove beneficial to the city, and would work no injury to the property-holders thereon, reciting the ordinance by which the consent of the city is given, and asking the chancellor to inquire into the facts alleged, and, if true, that the street be closed, &c. The Louisville, New Albany and Chicago Railroad Company filed its answer and cross-petition against the present appellants, in which it unites with the city of Louisville in asking that Columbia street be closed, for the reason that it would prove beneficial to the corporation and result in no injury to the property-holders.

This is, in fact, a controversy between this corporation and the appellants, whose property borders on Columbia street, the attorney for the city consenting because he had been so directed by an ordinance of the city council. The real estate owned by these appellants, and upon which they live, lies between Fourteenth and Fifteenth streets, and Columbia street is between Rowan and Duncan streets.

There is much conflict in the testimony as to the injury sustained by these lot-owners in the event Columbia street should be closed at the point and in the manner directed by the ordinance. It is maintained by the railroad company, or by the city, that the mode of ingress and egress to and from this property is in nowise disturbed, and that such is the condition of Columbia street, where the obstruction complained of is said to exist, that travel in vehicles would be dangerous by reason of railroad tracks and the moving of cars that have already, in effect, for the purpose of travel, closed this street; still it appears that those living on Columbia street, and who wish to go east to the main or business part of the city, must first go west on Columbia to Fifteenth street, and then north or south to some other street, and thence east to the center of trade.

The Legislature, in giving this power to the city council, has been careful to guard the interest of those owning property on a street, and before it can be closed it must appear that it will be of benefit to the city, and not injurious to the owners of the property bordering on the street. While many of the witnesses say that the appellants ought not to complain because they are not injured, the fact exists that the ingress and egress to and from their homes to Fourteenth street is closed if this ordinance of the city is enforced, and as a result, when they wish to travel east on foot or in a vehicle, they must first go west, leaving Fourteenth street behind, and travel to 'Fifteenth street. That this works an inconvenience and injury to the lot-owners who had, in the first place, but the two modes of ingress and egress,

is too plain a proposition to be controverted; and besides, the fact of the injury is established upon testimony not in effect disputed as to the great inconvenience that must necessarily result to the owners of lots bordering on this street and lying between Fourteenth and Fifteenth streets. The case of Baily v. Culver, found in 12 Mo. App., 175, is the strongest case referred to by counsel for the appellees in support of the right of the city to close this street, either for its own use or for the benefit of the Louisville, New Albany and Chicago Railway Company. In that case a deflected alley was substituted for a straight one, and the court, in substance, said that this change was as harmless to the absolute rights of the parties complaining as if the obstruction were on a street in any other part of the city. The rule laid down in that case accords to the owner of a lot abutting on a public street a vested right to the easement, only in so far as his boundary line extends; and this right, says the court, *"is as fully protected* against invasion by legislative or municipal agencies as the right to his house or his farm. But beyond the limits of contiguity with his lot, his rights in the easement are only those of a member of the public at large. If he could claim more than these at a longitudinal distance of fifty feet from his lot, he could claim the same at a distance of a mile or of ten miles."

The court, in the case cited, was using this argument in reference to the facts of the particular case, and upon the idea, as said in the opinion, of *"other egress being still provided for them."* If the owner is confined in his right to the enjoyment of the easement in so far as his

lot borders on the street, it then follows that the owners of these lots located on Columbia street, between Fourteenth and Fifteenth streets, may be denied all access to their lots by closing the approach from each end of the street, and the only remedy is a resort to an indictment upon the idea that it constituted a public wrong and not a private injury. Nor does it follow, because this vested right to the easement exists to enable him to approach the streets running north and south in front of the square in which his property is located, that he can assert the same right in regard to all the other streets of the city. The owner has purchased his property located on a street where his approach and egress is uninterrupted from the streets adjoining. He has an outlet east and west, and no other, and to close either or both is a private injury, for which he shall have redress, unless another way is created that affords him a like convenience; and the mere fact that it may be a few feet longer, or crooked instead of straight, is not such an invasion of his rights as would require the chancellor to interfere or give to him an action at law for damages. In the case of Smith v. City of Boston, 7 Cush., 255, the owner of lots had sued the city for damages caused by the discontinuance of a part of Market street. On the trial the court told the jury that the plaintiff was not entitled to damages, because neither of his lots abutted on that part of Market street discontinued. The case went to the Supreme Court of the State, and it was held, Chief Justice Shaw delivering the opinion, that the direction given by the trial judge was proper, and that the inconvenience, if any, sustained by the appel-

lant was not such an injury as entitled him to damages
within the true intent of the law. In that case the court
said: "There is obviously a difficulty in laying down
a general rule applicable to all cases; but as the peti-
tioner had free access to all his lots by public streets,
he was not entitled to recover, although by the change
he *was obliged to go somewhat further than he other-
wise would,*" and the rule there laid down, followed
by the Missouri case, *that the damage was limited to
some estate bounded on that part of the highway dis-
continued.* It must be conceded that the two cases
cited sustain the judgment below, as well as the views
of counsel appearing in this court for the city; but
after giving to each case the most careful considera-
tion, we are unable to see why such an injury is not
direct and specific in its character, and easily distin-
guished from remote and contingent rights that, when
disturbed, affect the entire public. We are aware that
the injury resulting from a public nuisance may be
greater in degree to one citizen than another, and still
the one who is the greatest sufferer must look to a
public prosecution to suppress it; but when the dam-
age is direct and immediate, such as depriving the
owner of property bordering on a street or alley of the
right of ingress and egress, by stopping up one end
of the street or alley, and providing no other means
of egress to other streets, the party injured is entitled
to his action for damages; or the corporation, whether
municipal or private, seeking to appropriate the street
to its own use, must resort to the writ of *ad quod dam-
num,* and under it compensate the owner for the injury
sustained.

This court, since the opinion in the case of Lexington
and Ohio Railroad Company v. Applegate, 8 Dana, 289,
was delivered, has universally held that this right of
property in the streets is *as inviolable as the property
in the lots themselves;* and the case of Transylvania
University v. City of Lexington, 3 B. M., 27, settles the
rights of the parties in this case. In discussing the con-
stitutional question presented in that case, Chief Justice
Robertson, speaking for the court, said : "As a private
right it must, like that of vicinage, be limited by its
own nature and end ; that is, chiefly by the necessity
of access to, and outlet from, the ground of the pro-
prietor." This right, therefore, is not to be deter-
mined by the mere fact as to whether the property
affected by the obstruction borders immediately on that
part of the street obstructed, but has the owner been
deprived of convenient access to and outlet from his
ground, and "beyond such general limit, as to each
proprietor of ground in the city, the streets are alto-
gether public highways, and subject like other public
roads to alteration," etc. It was expressly held in the
Transylvania case that this vested right in the streets
was not co-extensive with all the streets and alleys of
the city, but that "the owner of ground on any street
in Lexington has a right, as inviolable as it is indis-
putable, to the common and unobstructed use of the
contiguous highway, so far as it may be necessary for
affording him certain incidental easements and services,
*and a convenient outlet to other streets;* and of this
right the Legislature cannot deprive him without his
consent or a just compensation in money." If in the
nature of a private right, and such is the doctrine

recognized by this court, then any obstruction that deprives the property-holder, in a case like this, of the legitimate use of the street without his consent, or by due process of law, is in violation of his right of property. We are not to be understood as holding that such is the nature of this right vested in the property-holder as to prevent any change or alteration of a street under proper legislative authority, when there is still left convenient and reasonable access to, and outlet from, the ground of the owner; for at last this is the right he acquires in the streets or alleys upon which his property is located; nor is it a question as to the increased or diminished value of his property, by reason of an improvement that causes the obstruction. His property might be increased in value by obstructing or closing the entire street; still, if the right of ingress or egress is taken from him, wholly or partially, so as to work an injury, it is taking private property without first making just compensation. This right the citizen is entitled to, whether he travels on foot, horseback or in his carriage. It is as sacred to the one as the other, and the fact that teams are not used on the street is no response to the complaint made.

In the case of Fulton v. The Short Route Railway Transfer Company, 85 Ky., 640, it was held that "the construction of a railroad on a street was not *per se* an encroachment upon the rights of the abutting lot-owner; but when deprived of the reasonable use of the street by its construction, he may apply to the courts for relief." It was there held that the construction of an elevated railroad, by reason of the manner of its

elevation, was not an unreasonable obstruction. That case sustains the doctrine announced in this case in holding that individual rights will not be disregarded that public benefits may accrue.

The consent of the city was given to the railroad company for the reason, no doubt, that the improvement to be made by the use of the street was regarded as beneficial to the city, and in this view of the case the appropriation by the railroad was proper, if the rights of others were not affected by it. As the case is here presented, the city has deprived the appellants of their right to the proper and necessary use of the street by closing it for the benefit of the railroad company, and if closed by the city for its own purposes the same constitutional question would arise. Neither could appropriate the street to the injury of the property-holder without making just compensation.

The judgment below is, therefore, reversed, with directions to dismiss the petition of the city and the answer and cross-petition of the railroad company without prejudice.