## Sandy Valley & Elkhorn Railway Company v. Bentley, et al.

(Decided December 11, 1914.)

### Appeal from Letcher Circuit Court.

1. Eminent Domain—Value of Property Condemned—Measure of Damages—Instruction.—In a condemnation proceeding, an instruction authorizing the jury to find for the defendant the market value of the property and defining the market value as "that price it would bring when it was offered for sale by one who desires but is not obliged to sell it, and is bought by one who is under no necessity of buying it," was proper.

2. Eminent Domain—Appeal to Circuit Court—When Value of Property Determined—Evidence.—In a condemnation proceeding, where an appeal is prosecuted to the circuit court, evidence of the value of the property condemned should be confined to its value at the time of the trial.

3. Eminent Domain—Obligation to Take Property After Judgment.— A judgment in a condemnation proceeding does not impose on the party seeking to condemn the absolute obligation to take the property.

4. Eminent Domain—Improvements Erected After Commencement of Action—Instruction.—So long as a party acts in good faith and as an ordinarily prudent business man would do under like or similar circumstances, he is not to be deprived of the value of such reasonable improvements as he may make after the commencement of a condemnation proceeding, and it was not error to refuse an offered instruction authorizing the jury to make a deduction for any improvements made after the proceeding was instituted.

5.  Eminent Domain—Evidence—Opinion of Witnesses Without Facts
to Support Them—Discretion of Trial Court.—In a condemnation
proceeding, where there had been no sales of similar property
sufficiently near in point of time and circumstances to afford a
fair basis in measuring the market value of the property con-
demned, it was not error to permit witnesses to give their opin-
ions without qualifying themselves by stating facts upon which
their opinions were based; the determination of the qualifica-
tions of such witnesses rests largely in the discretion of the
trial judge.

6.  Eminent Domain—Qualification of Witnesses—Value of Opinions
—Question for Jury.—In a condemnation proceeding where a
witness possessing some knowledge of the subject gives his
opinion as to the value of the property, it is proper to cross-
examine him as to the extent and accuracy of his knowledge
and the facts on which such knowledge is based, and the value
of his opinion is then for the jury.

7.  Evidence—Value of Property—Opinion of Witnesses.—Persons
may testify to the value of property, although no sales have been
made to their knowledge of that or similar property.

8.  Eminent Domain—Evidence of Value—Opinions of Witnesses—
Exception to General Rule.—Evidence of value in condemnation
proceedings furnishes an exception to the general rule that wit-
nesses are to state facts and not express opinions.

9.  Eminent Domain—Value of Property Condemned—Uses—Evi-
dence.—The market value of property may be estimated by ref-
erence to the uses for which it is suitable, having regard to
the existing business or wants of the community, or such as
may be reasonably expected in the near future.

10. Eminent Domain—Rejection of Material Evidence—Not Preju-
dicial—In a condemnation proceeding, the rejection of the
sheets upon which defendants had scheduled their property for
taxation held not prejudicial, in view of the fact that, though
admissible, they threw but little light on the actual value of the
property assessed, and necessarily had but small weight with
the jury.

11. Eminent Domain—Damages Not Excessive—Evidence.—In a con-
demnation proceeding, evidence examined, and held, that a ver-
dict of the jury fixing the value of the property at $43,000 was
not excessive.

12. Appeal—Limitation of Review—Condemnation Proceeding—Ver-
dict.—In a condemnation proceeding, where six witnesses for
plaintiff fixed the value of the property at from $2,500 to $5,000,
and nine witnesses for the defendant fixed its value at from
$40,000 to $65,000, this court has no authority to disregard en-
tirely the evidence and the finding of the jury, and fix the mar-
ket value of the property at what, in the opinion of the court,
would be fair and right under the circumstances.

13. Appeal—Misconduct of Counsel—Objection Sustained by Trial
Court.—A judgment will not be reversed for misconduct of coun-

sel, where the court in each instance sustained objections to the language complained of and admonished the jury not to consider it.

HAGER & STEWART, MORGAN & HARVIE and S. S. WILLIS for appellant.

O'REAR & WILLIAMS, DAVID HAYS and S. B. DISHMAN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Sandy Valley & Elkhorn Railway Company, instituted this proceeding in the Letcher County Court to condemn a lot of ground, consisting of one and two-hundredths acres, situated in the town of Jenkins, and belonging to defendants, J. H. Bentley and Mary Bentley. The commissioners appointed by the county court fixed the value of the lot at $21,500. Plaintiff excepted to the finding of the commissioners, and on a trial before a jury a verdict fixing the value of the lot at $37,000 was rendered. On appeal to the Letcher Circuit Court, a jury there fixed the value of the lot at $43,000. The railroad company appeals.

It appears from the evidence that Jenkins is a town of four or five thousand inhabitants, and is several miles long. It is located in a narrow valley. It came into existence during the summer of 1911, and its remarkable growth is due to the coal development in that section of the State. The Consolidated Coal Company had acquired almost all the land within a radius of five miles of Jenkins. When this proceeding was instituted the lot in question was occupied by an old dwelling house and store. These buildings were small, and of but little value. After this suit was filed the defendant built a better residence and a more substantial store, both buildings costing about $1,000. The defendants conducted a country store on the property and lived on it.

Plaintiff introduced six witnesses who valued the land as of June 3, 1912, at from $2,500 to $5,000. The defendants introduced nine witnesses who valued the land at from $40,000 to $65,000.

The court instructed the jury as follows:

"The court tells the jury that they will find for the defendant a fair equivalent for the entire piece of property, which finding should be its market value at present in money, and its market value is that price it would bring when it was offered for sale by one who de-

sires but is not obliged to sell it, and is bought by one who is under no necessity of buying it; in other words, a fair market value means the fair value between one who wants to purchase and one who wants to sell.''

Plaintiff offered the following instructions, which were refused:

''a. The court says to the jury, the measure of damages, when the whole of any particular piece of property is taken for public use as in this case, is the market value of that property, so taken.

''The term market value means the fair value as between one who wants to purchase and one who wants to sell, and not what could be obtained for it, under peculiar circumstances, when a greater than its fair price could be obtained, nor its speculative value, nor a value obtained from the necessity of another.

''b. Therefore, you will find for the defendants, J. H. and Mary Bentley, the fair and reasonable market value in cash as above defined, for the one and two hundredths of an acre of land, sought to be taken in this proceeding by the plaintiff, and you will fix a value as of today.

''c. The court says to the jury that you cannot find for the defendants the value of any improvements placed on the property after this proceeding was instituted, which was the 3rd day of June, 1912, and you will deduct from the present value of said property the value of the new store building and of the new dwelling house, which defendants erected on the property since the institution of this proceeding.''

It is first insisted that the trial court erred in giving the instruction by which the case was submitted to the jury, and in refusing the instructions offered by plaintiff. The given instruction has been often approved by this court: Calor Oil & Gas Co. v. Franzell, 128 Ky., 734; Madisonville, &c., R. Co. v. Ross, 126 Ky., 138; Lewis on Eminent Domain, Section 478; David v. L. & I. Railroad Co., 158 Ky., 721. Plaintiff, however, contends that the measure of damages is incorrect as applied to the facts of this case, because it did not permit the jury to make any deduction for improvements made after the action was instituted. It is the settled rule in this state that in a condemnation proceeding, where an appeal is prosecuted to the circuit court, evidence of the value of the property condemned should be confined to its value at the time of the trial. David v. L. & I. Railroad Co.,

*supra.* A judgment in a condemnation proceeding does not impose upon the party seeking to condemn the absolute obligation of taking the property. That being true, we are not disposed to hold that if the owner improves the property after the proceedings were instituted, and an appeal is prosecuted, he does so at his peril. So long as he acts in good faith, and as an ordinarily prudent business man would do under like or similar circumstances, he is not to be deprived of the value of such reasonable improvements as he may make. Here the defendants had a substantial mercantile business from which they derived a good income. The old buildings were of but little value. The new buildings cost about $1,000. There is nothing in the record to show that the defendants acted in bad faith in erecting the improvements, and as the value of the new improvements is very small in comparison to the value of the lot, we see no reason why their value should be excluded in determining the value of the lot.

It is next insisted that the court erred in permitting defendants' witnesses, who had not sufficiently qualified themselves, to give their opinions as to the market value of the property in question. Some of these witnesses lived in Jenkins, and some of them lived some distance therefrom. In this connection it is insisted that we should apply the rule applicable to will cases, where it is sought to set aside the will on the ground of mental incapacity, and hold that opinions without facts to support them are of no value. Clark v. Young, 146 Ky., 373; Phillips v. Phillips, 149 Ky., 206. In our opinion, however, the same rule does not apply. Here it was difficult to obtain any facts on which to base an opinion. There had been no sales of similar property sufficiently near in point of time and circumstances to afford a fair basis in measuring the market value of the property condemned. After all, the question was reduced to one of opinion. It is not possible to lay down with any reasonable accuracy how much knowledge a witness shall possess in order to express such an opinion. The determination of this matter rests largely in the discretion of the trial judge. Stilwell Mfg. Co. v. Phelps, 130 U. S., 520; Lawrence v. Boston, 119 Mass., 126; Chandler v. Jamaica Pond Aqueduct Corporation, 125 Mass., 544. Where a witness possessing some knowledge of the subject gives his opinion, it is, of course, proper to cross-examine him as to the extent and accuracy of his knowl-

edge, and the facts on which such knowledge is based. The value of his opinion is then for the jury. It will not do to say that because a witness does not know of any sales having been made, he is thereby precluded from giving his opinion as to the value of the property. Indeed, it has often been held that persons may testify as to the value of property, although no sales have been made to their knowledge of that or similar property. Montana Railway Co. v. Warren, 137 U. S., 348. Furthermore, evidence of value in condemnation proceedings furnishes an exception to the general rule that witnesses are to state facts and not express opinions. Little Rock Junction R. Co. v. Woodruff, 49 Ark., 381, 4 Am. St. R., 51; L. &. N. R. R. Co. v. Jones, 21 Ky. L. R., 749. If the rule were otherwise, then, as stated, there would be but little, if any, competent evidence before us in this case. While it may be that those testify ing for defendants are not to be regarded as experts on lot values, it is likewise true that plaintiff's witnesses did not show a superior knowledge.

Another error relied on is the fact that the trial court permitted witnesses to show that practically all of the property in the town of Jenkins was owned by the Consolidated Coal Company, and was not for sale. It is well settled that the market value of property may be estimated by reference to the uses for which it is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future. Chicago, St. Louis & New Orleans R. R. Co. v. Rottgering, 26 Ky. L. R., 1167; West Virginia, &c. R. Co. v. Gibson, 94 Ky., 234. Necessarily, therefore, the market value of property is affected by the supply and demand. If the property is suitable and valuable for business purposes, the fact that no other property in the community may be secured for that purpose will necessarily add to its market value. We therefore see no error in the admission of the evidence complained of.

There are other complaints in regard to the admission of evidence, but we find in each instance that plaintiff's objections were sustained thereto.

Further alleged error grows out of the refusal of the trial court to permit the yellow sheets on which the defendants had scheduled their property for taxation to be given in evidence. While such evidence is admissible, yet in view of the fact that it throws but little light on

the actual value of the property assessed, and necessarily has but small weight with the jury, we conclude that its rejection was not prejudicial. L. & N. R. R. Co. v. White Villa Club, 155 Ky., 452.

One of the chief complaints of plaintiff is that the verdict is excessive. As before stated, the case is a peculiar one. The land sought to be condemned lies in a long, narrow valley, in which is located the town of Jenkins. In this valley there is but little, if any, land available for private business enterprises. Since the great development and growth of the town there have been but few sales of similar property. That the lot in question, by reason of its location and adaptability for business purposes, and by reason of the great difficulty in securing like property for such purposes, has an unusually high market value, there can be no doubt. Six witnesses for the plaintiff fix the value of the lot as of June 3, 1912, at from $2,500 to $5,000. The evidence should have been confined to the time of the last trial. In view of this fact, and of the changed conditions, the evidence for plaintiff was of but little value. On the other hand, nine witnesses fixed the value of the lot at from $40,000 to $65,000. While it may be true that the value of the property as fixed by the jury is unusually high, and much more than we would have fixed it, if the question were not for the jury but one for our determination, yet where six witnesses fix the value at from $2,500 to $5,000, and nine witnesses fix the value at from $40,000 to $65,000, we know of no rule of law that will permit us absolutely to ignore the testimony of the nine witnesses, and conclude that the six witnesses are correct in their opinion. Indeed, the only way by which we could reverse this case would be to disregard the evidence entirely, and also the finding of the jury, and fix the market value of the lot in controversy at what we think would be fair and right under the circumstances. This we have no right to do. In the case of L. & N. R. R. Co. v. White Villa Club, 155 Ky., 452, it was insisted that the value placed by the jury on certain land sought to be condemned was excessive. In discussing the question the court said:

"It is true the assessment made by the jury was large, and yet there was abundant evidence to support the finding. Of course there was wide difference of opinion between the estimates as to the damage made by the witnesses for the railroad company and by the witnesses

for the club, but in all cases of this character there is room for much latitude of opinion, and the jury was as well, if not better, qualified than we are to reconcile differences of opinion as to value and arrive at a reasonable and fair conclusion.''

Lastly, it is insisted that counsel for defendants were guilty of misconduct in stating before several of the jurymen while the jury was being empaneled, and in making the opening statement, to the effect that plaintiff wanted to get possession of the property for the purpose of putting their client out of business. As the court, however, very promptly in each instance sustained an objection to the language complained of, and admonished the jury not to consider it, we see no reason for reversing the case on this ground.

Of course, the judgment does not require the plaintiff to take the property, but only to pay the amount fixed by the judgment in case it elects to take it. Nor does the affirmance carry damages.

Judgment affirmed.