## Lexington & Eastern Railway Co. v. Sumner, et al.

(Decided December 12, 1922.)

### Appeal from Letcher Circuit Court.

1. Eminent Domain—Condemnation Proceedings—Excessive Award. —Where in a proceeding to condemn a right of way for railroad purposes the jury viewed the premises and there was evidence that would have supported a larger finding, and a jury in the county court fixed the damages at 8,000.00, it cannot be said that an award of $7,500.00 by the jury in the circuit court was excessive.

2. New Trial—Misconduct of Stranger—Affidavits—Sufficiency.— The misconduct of a stranger in making certain remarks in the presence of the jury is not available as a ground for a new trial where the affidavits do not allege that the misconduct was not discovered until after the trial.

JOHN D. CARROLL, MORGAN & HARVIE, P. T. WHEELER, F. G. FIELDS, D. D. DAY and W. O. DAVIS for appellant.

D. D. FIELDS and R. MONROE FIELDS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In building a spur line along Rockhouse creek in Letcher county, the Lexington & Eastern Railway Company condemned a right of way 100 feet wide through a 150 acre farm owned by John W. Sumner. In addition to taking 4½ acres of bottom land and 1½ acres of hillside land, an old house and a number of fruit trees were destroyed, and the Sumner residence, which immediately adjoined the right of way, was separated from the bot-

tom land. The commissioners fixed the damages at $4,055.00. The jury in the county court assessed the damages at $8,000.00. On appeal to the circuit court the jury awarded damages in the sum of $7,500.00. From that judgment the railroad company appeals.

It is insisted that the damages are excessive and were the result of prejudice and passion superinduced by a remark made by a stranger to the litigation.

The claim for damages included (1) land actually taken; (2) injury to the remainder of the tract on account of the situation in which it was left by the taking; (3) fruit trees destroyed; (4) the old house removed or destroyed; (5) necessary fencing; (6) inconvenience in getting from the residence to that portion of the farm cut off by the railroad right of way.

Of the witnesses who testified for the company, C. H. Back, the county clerk, fixed the market value of the bottom land at from $100.00 to $150.00 an acre. Dr. Ison fixed the value of the bottom land at from $300.00 to $500.00 an acre, and the hillside land at from $25.00 to $50.00 an acre, and the value of the whole farm before the taking at from $7,000.00 to $10,000.00, and after the taking at from $6,000.00 to $7,000.00. George S. Clark said that the whole farm before the taking was worth from $8,000.00 to $10,000.00, and was worth that much after the taking, and that the land taken was worth $200.00 or $300.00 an acre. J. W. Adams testified that the farm was worth before the taking at from $5,000.00 to $7,000.00, and after the taking $12,000.00; that the land taken was worth $3,000.00, and that $200.00 an acre was the market value of the entire strip. Wilbourn Hampton said that $500.00 an acre was a fair price for the land taken and that the bottom land was worth $500.00 and the hillside land $20.00 an acre. Joe Cundiff fixed the value of the bottom land at $200.00 an acre and the hillside land at $100.00 an acre. T. A. Dixon, one of the commissioners, fixed the bottom land at $500.00 an acre, and the hillside land at $50.00 an acre, and the value of the whole farm before the taking at $12,000.00, and after the taking at $10,000.00. He further testified that in assessing the whole damages at $4,055.00, the commissioners included the Sumner residence which, it was thought, would be taken, and valued it at $1,500.00. He also said that the old house which was destroyed was valued at $250.00 and that there were six or eight fruit trees destroyed which were worth about $25.00 apiece,

and that the cost of the fencing was $250.00. W. H. Davis said that the bottom land was worth from $275.00 to $300.00 an acre, and that the value of the hillside land was very small, and that he valued the whole farm at from $275.00 to $300.00 an acre before the taking. Fess Whitaker, county judge, fixed the value of the land taken at $2,000.00, and first fixed the value of the whole farm before the taking at $10,000.00, and its value after the taking at more than that. Upon being further examined by the court he said that the farm was worth $5,000.00 before the taking and $2,000.00 after the taking. He further said that the old house which was destroyed was worth about $50.00 and fixed the cost of the necessary fencing at $75.00. E. C. Holliday fixed the value of the bottom land at $250.00 an acre and the hillside land at from $25.00 to $30.00 an acre, and the value of the whole farm before the taking at $4,000.00 and after the taking at $3,000.00. He also testified that the old house was worth about $50.00, and that there were about nineteen fruit trees destroyed which were worth about $75.00. Mr. Dudley testified that the bottom land was worth $150.00 an acre and the hillside land at from $10.00 to $25.00 an acre, and that the whole farm was worth more after the taking than it was before.

On the other hand Sumner fixed the value of the farm before the taking at $25,000.00, and after the taking at $10,000.00, and the value of the land taken at $1,000.00 an acre. He also said that about twenty apple trees, six or eight peach trees, one pear tree, two mulberry trees and some gooseberry bushes and grape vines were destroyed; that the apple trees were worth $25.00 each, the peach trees $5.00 each, and the other trees and vines $25.00. He further said that the old house destroyed was worth about $800.00 to $1,000.00, and that the fencing made necessary by the taking cost about $400.00. Riley Combs fixed the value of the whole farm before the taking at $20,000.00 and after the taking at one-half of that sum, or $10,000.00. He further fixed the value of the bottom land at $1,000.00 an acre and the value of the whole land at $500.00 an acre. Will Dixon said that before the taking the farm was worth at from $18,000.00 to $20,000.00, and after the taking about $9,500.00. Alamander Whitaker fixed the value of the whole farm before the taking at $20,000.00, and its value after the taking at one-half that sum or $10,000.00. He further said that the strip taken was worth $10,000.00, considering

inconveniences and depreciation of the other part of the
land. Wilbourn Dixon said that before the taking the
farm was worth $20,000.00, and after the taking $10,-
000.00; that the hillside land was worth from $400.00
to $500.00 an acre, and the bottom land $1,000.00 an acre.
S. A. Griffith also fixed the value of the farm before the
taking at $20,000.00 and after the taking at $10,000.00.
Charlie Pratt said the farm before the taking was worth
$17,000.00, and after the taking $10,000.00 less. Finley
Sumner said the farm before the taking was worth
$20,000.00, and and after the taking one-half that much,
or $10,000.00. Tom Watts said the farm before the tak-
ing was worth $20,000.00, and after the taking $10,000.00.
Ance Cornett said the farm before the taking was worth
$20,000.00, and after the taking $10,000.00.

The company also proved that the railroad was built
in 1917, and that Sumner assessed his whole farm for
that year at $3,000.00, and for the year 1918 at $5,280.00,
and for the year 1919 at $4,780.00.

It is peculiarly the province of the jury to assess
damages in condemnation proceedings and we are not
at liberty to set aside its finding where it is supported by
substantial evidence. In the case of Sandy Valley & E.
Ry. Co. v. Bentley, 161 Ky. 555, 171 S. W. 178, the jury
fixed the value of a condemned lot at $43,000.00. In dis-
cussing the question of damages, we said:

"While it may be true that the value of the property
as fixed by the jury is unusually high, and much more
than we would have fixed it, if the question were not for
the jury, but one for our determination, yet where six
witnesses fix the value at from $2,500.00 to $5,000.00,
and nine witnesses fix the value at from $40,000.00 to
$65,000.00, we know of no rule of law that will permit us
absolutely to ignore the testimony of the nine witnesses,
and conclude that the six witnesses are correct in their
opinion. Indeed, the only way by which we could re-
verse this case would be to disregard the evidence en-
tirely, and also the finding of the jury, and fix the market
value of the lot in controversy at what we think would
be fair and right under the circumstances. This we have
no right to do."

Another case directly in point is that of Louisville
& N. R. R. Co. v. White Villa Club, 155 Ky. 452, 159 S.
W. 983, where we said:

"It is true the assessment made by the jury was
large, and yet there was abundant evidence to support

the finding. Of course, there was wide difference of opinion between the estimates as to the damage made by the witnesses for the railroad company and by the witnesses for the club; but in all cases of this character there is room for much latitude of opinion, and the jury was as well, if not better, qualified than we are to reconcile differences of opinion as to value and arrive at a reasonable and fair conclusion. In addition to the evidence of the witnesses, the jury had the benefit of seeing for themselves the property, and they had the right to, and doubtless did, form opinions of their own independent of what the witnesses said as to the amount of damage the club had sustained. At any rate, under all the facts shown in the record, the verdict is not so excessive as to warrant us in saying that it was the result of passion or prejudice.''

In the case at bar there was also a wide difference of opinion as to the amount of damages, but as the jury viewed the premises, and were thus able to form an independent opinion of their own, and there was evidence before them that would have supported a larger finding, and their finding was $500.00 less than the damages fixed by the jury in the county court, we are not prepared to say that the damages allowed are excessive.

A new trial was also asked on the ground that H. B. Bransome, a stranger to the litigation, made certain prejudicial remarks in the presence of the jury while they were viewing the premises. In reply to this contention it is sufficient to say that this ground was not available if known by appellant before the completion of the trial, and the affidavits do not allege that it was not discovered until after the trial.

Judgment affirmed.