# Chesapeake & Ohio Railway Company v. Eastham.

(Decided May 12, 1933.)

BROWNING & DAVIS for appellant.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

As stated in appellant's brief, this is an appeal from a judgment for $875 in favor of appellee, Lillian Eastham, rendered in an action instituted by her to recover for alleged damage to certain real estate owned by her, situated on Panola street in Catlettsburg, Ky.

The basis of appellee's complaint is the destruction by the appellant railway company of a considerable part of Panola street, with the result that the ingress to and egress from appellee's property was destroyed, thereby directly and materially depreciating its market value.

The material facts of the case, it appears, are not in dispute, and, briefly stated, are as follows: The appellee is the owner of a lot of ground fronting on Louisa street, Catlettsburg, Ky., and extending back to Panola street. On this lot there are five buildings, appellee's residence, which fronts on Louisa street, a frame cottage near the middle of the lot, and three frame cottages on the rear of the lot, facing on Panola street. The appellee also owns a small lot on the opposite side of Panola street, on which is constructed a small cottage.

These four houses fronting on Panola street are rented to colored families.

Still following this statement of facts as presented in appellant's brief, it further appears that prior to the year 1929, Panola street extended in a southerly direction from the business section of Catlettsburg to what is known as 30th street, where it crossed the railway tracks of the appellant. From this point, continuing southeastwardly, it wound up and along the face of the rather steep river hills, coming to an end just south of appellee's property and it was thus, even before the complained of destruction of Panola, a mere cul de sac, as it was open only at its north end, and appellee's only means of ingress and egress for the tenants of her Pan-

ola street cottages, situated at its southern terminal, was over the north end of the street. Since the destruction, or closing up, of Panola street at a nearby point north of appellee's property, by appellant, as hereinafter stated, or from 30th street southwardly for a distance of several hundred feet in the direction of appellee's lot, she has had no outlet whatever from her cottages on Panola street, either northwardly or southwardly, except over and by a narrow, rough side alley, some 10 or 12 feet wide, called "Rocky Alley," which, it appears, is both unsatisfactory and inadequate for meeting this section's need and general use as a street.

Further, it is shown by the evidence, that the now closed Panola street was a public street for thirty or forty years, was some 40 feet wide, and led from the main business part of the town southerly up over the railroad tracks, near 30th street, and then through a negro settlement on the hill to appellee's property shortly beyond, near where it closes. This street was not paved, but had been made, by a covering of rocks and cinders, a usable street for all kinds of traffic and served as the only short and direct outlet for the tenants of appellee's property on Panola street to the business section of Catlettsburg. It is undisputed that this way in and out from her property was lost by the later improvements constructed by appellant along this street and that its construction work thereon caused and resulted in its permanent destruction as a passway.

As further stated by appellant, it made extensive changes in the year 1929 in its line of railway through the city of Catlettsburg and that "such work had for its primary objects the elimination of several grade crossings in the city, the construction of an additional track, and the elevation of the grade of existing tracks." The nature, locality, and extent of these improvements are fully set out in the opinion of this court in York v. Chesapeake & Ohio Railway Co., 240 Ky. 114, 41 S. W. (2d) 668, 669. Reference to that case is here made for a full and clear statement of the character, extent, and reasons underlying the making of these extensive improvements in the city of Catlettsburg and for a statement of the circumstances and considerations influencing the city's passing of the ordinances authorizing the appellant, upon the terms therein stated, to make them. However, by some inadvertence, we suppose, no copy

of this ordinance is furnished by the record to advise us of its express terms and conditions.

The transactions had between the city and the railway company, leading up to the city's passing these ordinances and the company's extensive improvements of its railway system in the city, as thereunder made and authorized, are, in part, referred to in the course of the court's opinion in the York Case, supra, as follows:

> "The railway company was hampered in the prompt dispatch through the city of its trains because of unnecessary curves and grades and lack of requisite trackage.
>
> "For the purpose of remedying these conditions, costly and inconvenient both to the public and itself, the railway company in the early part of 1929 submitted a plan to the city by which it proposed to acquire additional rights of way sufficient for the construction of four tracks and for the elimination of curves and grades, provided various grade crossings should be closed in return for the construction by the railway company of certain undergrade crossings. Numerous public meetings were held at which the plan was discussed and objections by the city officials and citizens were considered. The plan was modified and changed from time to time, ultimately resulting in the one approved in the ordinances above referred to. The ordinances, in substance, granted the railway company the right to maintain and operate a four-track line of railway through the city of Catlettsburg along the route designated by the company and provided that various grade crossings should be closed."

In return, the railway company was required to construct certain undergrade crossings and approximately 5,000 feet of new concrete streets and to make other improvements and changes. The principal street it was required to construct was a new concrete street immediately south of and parallel to its right of way and extending from 21st street on the west to Louisa street's undergrade crossing on the east.

It indisputably appears by the evidence that in the construction of this new street, the hillside on the south, or west side, was caused to slip or slide with the result

that the part of Panola street in the area so affected, being a distance of about 1,000 feet, was destroyed. It is conceded by appellant that the destruction of this part of Panola street, of which complaint is made, was the result of appellant's construction of this new street, permanently destroying Panola street as a north pass-way thereover for the tenants of appellee's cottages abutting on Panola street. However, it is also conceded that the above described city ordinance authorized the appellant to make the changes and improvements mentioned, embracing its construction of this new street.

The appellee, claiming that this above described permanent destruction of Panola street was a wrongful and tortious appropriation and taking by appellant of Panola street, destroying her right of ingress to and egress from her property abutting thereon, instituted her action in the Boyd circuit court, therein seeking damages in the sum of $3,000 for the impairment of the market and rental value of her property situated thereon.

From a judgment in favor of appellee, plaintiff below, in the amount of $875, the appellant, defendant below, has prosecuted this appeal, relying upon the following grounds for reversal: (1) That no responsibility on the part of appellant for the alleged damage to appellee's property is shown, for which reason, it contends, the court erred in not directing a verdict for appellant; (2) that as to appellee, any damage resulting from the closing of Panola street is damnum absque injuria; and (3) that the verdict is grossly excessive.

Considering these objections in their order made, appellant first contends that the record shows that appellant was required by an ordinance of the city to construct the improvements upon Panola street, which resulted in the damage to and destruction thereof complained of and, further, there is no showing made that the appellant, by the terms of the ordinance or otherwise, assumed any responsibility for the resulting damage to abutting property owners or others. Appellant contends that, such being the situation, the only question here presented is, whether one who constructs a street under an ordinance or contract of a city is responsible for damages which resulted in the performance of such work, done in accordance with the terms

of the ordinance, adding, however, that the existence of such liability upon the part of the city is, of course, obvious. Insisting upon this ground of its nonliability, as being under the ordinance an individual contractor with the city, it argues that it is equally obvious, that it as the individual contractor, who did the work under municipal authority, is not so liable in the absence of negligence or other improper conduct, citing in support of such ground of defense that it was to such effect decided by this court in the case of Pearson v. Zable, 78 Ky. 170, wherein recovery was denied to an abutting property owner who sought to hold the contractor liable for damages to his property, resulting from a change in the grade of a city street, the court therein saying:

"What they did having been done under authority of law, they are not responsible for injury resulting to the appellants in consequence of the failure to provide an outlet for the water accumulating in the street, or for the consequences resulting from it. It was not their duty, but the duty of the city to provide plans for the work, and to guard against unnecessary injury to property."

The appellee, by brief of her counsel, while admitting that such was the holding in the cited case, answers:

"Here we do not have such a case. This is not a case where an individual contractor has done the work for the city, but a case in which the appellant was doing the work in a large part for itself. It was in co-partnership with the city, and if so in pari delicto with it. * * * It is admitted in evidence that appellant made these extensive changes in its line of railway through the City of Catlettsburg in 1929. * * * From that statement it is plain that this work was done not for the City of Catlettsburg, but for the benefit of the Chesapeake & Ohio Railway Company. In the prosecution of that work and for its own individual benefit, it caused the damages complained of."

Appellee contends that the main question presented by this appeal is, whether the appellant railway company, in the operation of its railway through the town of Catlettsburg, can go before the city council and secure permission to raise its tracks, tear up, destroy, and close existing streets, resulting in direct damage to the abutting property owners, and escape liability for that dam-

age under the guise of having done the work as an individual contractor under an ordinance.

Without undue elaboration upon these conflicting claims presented, it is made clear by the record, upon the undisputed facts as therein presented, that the appellant company, even though concededly acting under the authority of a city ordinance, made such an appropriation of Panola street, while constructing thereon these changes and improvements authorized, as to have resulted in its destruction as a public street for a considerable portion of its course, near to, and north of, appellee's property abutting thereon and, further, by so doing, it has destroyed and deprived appellee of her easement of ingress to and egress from her property abutting thereon.

The record does not contain or set out the terms of the ordinance of the city under which this construction work was performed by appellant, as to whether it expressly provided for the closing of Panola street at this point or merely authorized this construction work, which resulted in its destruction and closing. However, it is sufficient, in whatever way accomplished, that it is shown by the evidence that the appellant has here, by reason and as a result of its construction work done along Panola street and directly caused thereby, so appropriated and destroyed it as a public street as to have bottled up appellee's property thereon and permanently deprived her of her easement in and right of passway thereover.

In Stein v. C. & O. Ry. Co., 132 Ky. 322, 116 S. W. 373, it was held that lot owners have an easement in the street fronting their property of a reasonable ingress to and egress from their lots, both on foot and with vehicles and that the injury to such easement of a property owner is the taking of private property for public purposes for which compensation must be made under section 242 of the Constitution. Further, in the case of C. & O. Ry. Co. v. Wadsworth Electric Mfg. Co., 234 Ky. 645, 29 S. W. (2d) 650, 652, this court, in considering a grant by the city of Covington to the Chesapeake & Ohio Railway Company of certain rights in its streets and the exclusion of the public under an ordinance enacted by the city for the elimination of certain named grade crossings, said:

"Section 242 of the Constitution provides that

municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured, or destroyed by them. The provision means that damages may be demanded from all such corporations participating in the taking, and that the injured party is not required to look to one of them. It is true that in the case of Pearson v. Zable, 78 Ky. 170, it was held that a petition which failed to allege that the contractors did not grade the street in all respects as provided in the contract failed to state a cause of action, since it was the duty of the city to provide plans for the work and to provide against injury to property. But that case was decided under the Constitution of 1850, and after the adoption of the present Constitution the court said: 'If Larue county could not, without liability to the owner for damages, do the work in question so as to injure the plaintiff's premises, it must follow that it could not authorize another to do it with immunity. * * * "The agent cannot avert legal responsibility for his own wrongful act by pleading that he was employed or directed by a person who had no lawful authority." ' Layman v. Beeler, 113 Ky. 221, 67 S. W. 995, 996, 24 Ky. Law Rep. 174; City of Henderson v. McClain, 102 Ky. 402, 43 S. W. 700, 19 Ky. Law Rep. 1450, 39 L. R. A. 349; Yates v. Big Sandy R. R. Co. [Ky.] 89 S. W. 108, 28 Ky. Law Rep. 206; Pickerill v. City of Louisville et al., 125 Ky. 213, 100 S. W. 873, 30 Ky. Law Rep. 1239. In Louisville Railway Co. v. Foster, 108 Ky. 743, 57 S. W. 480, 22 Ky. Law Rep. 458, 50 L. R. A. 813, a street railway operating under legislative municipal authority is liable, under section 242 of the Constitution, for damages to abutting property.

"It is a settled principle in this state that authority granted to a railroad corporation to use a street does not authorize a disregard of the property rights of others or give immunity for their invasion. Willis v. K. & I. Bridge Co., 104 Ky. 186, 46 S. W. 488, 20 Ky. Law Rep. 475. Indeed, a city is not empowered to confer upon corporations any right in the streets to the entire exclusion of the public, and such an attempted grant is no protection against one who sues for an injury to

his property. Stein v. C. & O. Ry. Co., 132 Ky. 322, 116 S. W. 733; Wickliffe v. Ill. Cent. R. Co. [Ky.] 108 S. W. 243, 32 Ky. Law Rep. 1159; Commonwealth v. City of Frankfort, 92 Ky. 149, 17 S. W. 287, 13 Ky. Law Rep. 705; Louisville & N. R. Co. v. Whitley County Court, 95 Ky. 215, 24 S. W. 604, 15 Ky. Law Rep. 734, 44 Am. St. Rep. 220.''

To like effect see the case of Reining v. New York, L. & W. R. Co., 128 N. Y. 157, 28 N. E. 640, 14 L. R. A. 133, where it was declared that owners of lots abutting on city streets were entitled to the benefit of the street for access, and cannot be deprived thereof without compensation. This rule was again emphasized in Egerer v. New York C. & H. R. R. Co., 130 N. Y. 108, 29 N. E. 95, 14 L. R. A. 381, where it was held that an abutting owner cannot be deprived of the street affording him access to his premises, unless there is left for his use and enjoyment other suitable means of access, or just compensation is paid him for the deprivation of the same; and in Haynes v. Thomas, 7 Ind. 43, and Lackland v. North Missouri R. Co., 31 Mo. 180, 187, the principle is very concisely given that ''the right'' of an ''abutting'' owner to the use of a street ''is as much property as the lot itself, and the legislature has as little power to take away one as the other.''

We are of the opinion that the just and legal principles declared in these cases are both applicable to and controlling of this question presented in the instant case as to appellant's responsibility for injury to appellee's easement of ingress to and egress from her property on Panola street, caused by and resulting from appellant's destruction of her passway thereover, even though done by it under the claimed protection of a city ordinance, in that appellant's easement, being a property right, constituted such a taking of property as entitled her to compensation therefor.

The subject of this suit was the damage resulting to appellee's lots from the destruction or impairment of her easement of ingress and egress, which was an appurtenance of them. The appellee was entitled to her property, including this easement, which was itself a property right therein. Also, she owned such distinct property right or easement in the street fronting her property different from and in addition to the rights of the general public therein and which distinct easement

was that of reasonable ingress and egress to and from her lots, not only upon foot but by vehicle. It may here be, as was further said in the Stein Case, supra, "that it is better for the public if this street were closed, but if it be so—that the street ought to be closed —it should be closed by law, not by usurpation; if closed by law, the owners of property thereon, distinctly affected by it, should be paid for what was thereby taken for the public's use and safety. No argument of expediency can justify the destroying or the taking of a public street to the injury of private owners, although for the public benefit, without making just compensation therefor."

Such being our view of the law, it must follow that the evidence conclusively showing that the appellant has, through its destruction of Panola street, deprived her of her right of ingress and egress over Panola street, appurtenant to her property thereon, appellant's claim of nonresponsibility for damages for such injury done her cannot be sustained.

Next, turning our attention to appellant's further contention that any damage resulting to appellee from the closing of Panola street is damnum absque injuria, we are of the opinion that such claim is also, under the facts here shown by the evidence, without merit.

Appellant argues that, inasmuch as appellee's property lies east (or south) of the intersection of Panola street and Rocky Alley and that part of Panola street which was closed or destroyed by it is west (or north) of the intersection of Rocky Alley and said street, it follows that any damage sustained by appellee as the result of the destruction or closing of Panola street is damnum absque injuria. In other words, that the appellee is not such an abutting property owner within the meaning of the rule which confines the recovery of damages from the closing of the street to those property owners abutting thereon. That is, Catlettsburg is a municipality of the fourth class, and by the provisions of section 3562, Kentucky Statutes, being a part of its charter, a right of recovery for the closing of streets is confined to the "owners of ground in the squares or lots divided by such street, alley or highway, or the portion thereof proposed to be closed." This provision of the statutes has reference to the adoption of an ordinance by the council directing the closing of the whole or a

portion of a street or alley within the city, whereupon it directs that it shall then be the duty of the city attorney to institute an action in the circuit court for the purpose of having the same closed, wherein shall be made parties defendant thereto all the owners of ground in the squares or lots divided by such street, etc., and that, if any of such owners named as defendants object, the court shall impanel a jury, which shall hear evidence and determine the amount of compensation, in the form of damages, to be paid each of such defendants.

The record does not disclose whether the ordinance, relied on as a defense here by appellant, directed the closing in whole or in part of Panola street or whether or not, if it did so, any suit was thereupon ever instituted by the city attorney to determine the compensation to be paid by way of damages to the abutting lot owners injured by the closing of such street. Therefore, we are of the opinion that the appellant's pleading of such statutory provision is here untimely, it not appearing that the provisions of the statute were ever observed or followed as therein directed for determining what compensation, if any, the appellant or other abutting property owners on the closed street were entitled to receive. But apart from the urged consideration of this, we are of the opinion that the provisions of the cited statute are not adverse to the appellee's claim, even if considered as being here applicable. The facts as here shown are that there is no intersection of Panola street between the location of appellee's property thereon and the point of occlusion of said street by appellant, except a narrow and rough alley, some 10 or 12 feet in width, extending over to Louisa street, where access is had over it to the new concrete street constructed by appellant in lieu of the closed Panola street and which leads to the business section of the city. Appellant bottoms its claim that appellee's injury suffered through its destruction of her easement or passway over Panola street is one of damage without injury upon the case of Henderson v. City of Lexington, 132 Ky. 390, 111 S. W. 318, 323, 33 Ky. Law Rep. 703, 22 L. R. A. (N. S.) 20. In that case, the court in its opinion quoted with approval its language as used in the case of Transylvania University v. City of Lexington, 3 B. Mon. 25, 38 Am. Dec. 173, as follows:

"Every owner of ground on any street in Lexington has a right, as inviolable as it is indisputable, to the common and unobstructed use of the contiguous highway, so far as it may be necessary for affording him certain incidental easements and services, and for a convenient outlet to other streets. * * * The extent of this appurtenant right, depending on circumstances, may not in a particular case be easily definable with mathematical precision. * * * As a private right, it must, like that of vicinage, be limited by its own nature and end; that is, chiefly by the necessity of convenient access to, and outlet from, the ground of each proprietor." And continuing, it further said:

"It is, however, difficult to determine with fairness to the public, as well as the private owner, what property owners are so interested in the street, alley, or highway proposed to be closed as to render it necessary that they should be parties to the action. But our conclusion upon this question is that the only persons who are entitled to compensation and are necessary parties to the proceeding are those whose property abuts upon or adjoins the street, alley, or highway proposed to be closed. We do not mean by this to limit the property owner entitled to compensation or who are necessary parties to the action to those who own property immediately at the point of closure, but think it should embrace all persons and all property abutting upon the street proposed to be closed. * * * Therefore the equitable and practicable rule is to limit the persons entitled to compensation, and to be made parties to the property owners abutting on the street, alley or highway proposed to be closed between the nearest streets intersected by the street, alley, or highway to be closed."

Further, in the case of Gargan v. Louisville, N. A. & C. Ry. Co., 89 Ky. 212, 12 S. W. 259, 260, 11 Ky. Law Rep. 489, 6 L. R. A. 340, the court, in considering the like question there presented of what abutting land owners were entitled to compensation for injury done them under an ordinance closing Columbia street in the city of Louisville, said:

"While many of the witnesses say that the appellants ought not to complain because they are not

injured, the fact exists that the ingress and egress to and from their houses to 14th street is closed, if this ordinance of the city is enforced; and as a result, when they wish to travel east on foot or in vehicles, they must go west, leaving 14th street behind, and travel to 15th street. That this works an inconvenience and injury to the lot-owners, who had in the first place but two modes of ingress or egress, is too plain a proposition to be controverted. * * *

"We are aware that the injury resulting from a public nuisance may be greater in degree to one citizen than another, and still the one who is the greatest sufferer must look to a public prosecution to suppress it; but where the damage is direct and immediate, such as depriving the owner of property bordering on a street or alley of the right of ingress and egress by stopping up one end of the street or alley, and providing no other means of egress to other streets, the party injured is entitled to his action for damages; or the corporation, whether municipal or private, seeking to appropriate the street to its own use, must resort to the writ of ad quod damnum, and under it compensate the owner for the injury sustained. * * *

"We are not to be understood as holding that such is the nature of the right vested in the property holder as to prevent any change or alteration of a street under proper legislative authority, where there is still left convenient and reasonable access to, and outlet from, the ground of the owner; for at last this is the right he acquires in the streets or alleys upon which his property is located. * * *

"The consent of the city was given to the railroad company for the reason, no doubt, that the improvement to be made by the use of the street was regarded as beneficial to the city; and in this view of the case the appropriation by the railroad was proper, if the rights of others were not affected by it. As the case is here presented, the city has deprived the appellants of their right to the proper and necessary use of the street by closing it for the benefit of the railroad company, and, if closed by the city for its own purposes, the same constitu-

tional question would arise. Neither could appropriate the street to the injury of the property holder without making just compensation."

We are thus of the opinion that the appellee was here, as in the quoted case, injured upon the closing of the street, as herein described, and was entitled to be left a convenient and reasonable access to and outlet from her lots by such intersecting street as would afford her such character of ingress to and egress from her lots and that she was not left such convenient and reasonable way or outlet therefrom over the intersecting rough and narrow passway, termed "Rocky Alley." Such alley does not meet the measure and requirement of an intersecting street, as such term is used within the quoted statute and defined by the language of the quoted decisions of this court construing it. Therefore, it must follow that, within the meaning of the statute, appellee's property on Panola street was not placed in another or different square from that in which originally inclosed by reason merely of this inadequate, inconvenient, and narrow alley. Such being our conclusion, it needs must follow that she was properly included, under the provisions of the quoted statute, among the property owners to be named as defendants in an action instituted for the purpose of determining the amount of compensation, by way of damages, to which such abutting property owners were entitled, or, in the absence of the city's having directed by ordinance the closing of such way and the filing of such suit as directed, the appellee is entitled to damages by way of compensation for appellant's appropriation and destruction of said street, thereby depriving her of the exercise of her right of ingress to and egress from her property thereover.

It is insisted finally that the amount of damages allowed by the jury was grossly excessive. The determination of that question depended upon the evidence, which it is not deemed here needful to set forth in detail and thus unduly extend this opinion. It is sufficient here to state that both the appellee and her competent and qualified witnesses testified that the damage caused by appellant's destruction of this street to the market value of appellee's property was all for a much larger amount than awarded her by the jury. The nature and extent of the appellant's interference with

and destruction of her right of ingress to and egress from her property over Panola street was clearly and substantially presented by the evidence to the jury and was a question properly for its determination within the limits of the proof and we are without authority to interfere with its verdict based thereon or to reverse the judgment upon the alleged ground that it is excessive. Sandy Valley & Elkhorn Railway Co. v. Bentley, 161 Ky. 555, 171 S. W. 178; Lexington & Eastern Railway Co. v. Sumner, 196 Ky. 788, 245 S. W. 849; Long Fork Railway Co. v. Sizemore, 184 Ky. 54, 211 S. W. 193.

The judgment is affirmed.